[Civ. No. 22890. Second Dist., Div. Three. Sept. 11, 1958.]

GEORGE W. AYER, Respondent, v. E. W. ROBINSON, Appellant.

Bernard B. Cohen and Henry S. Cohen for Appellant.

Frank J. Kashare and Henry E. Kappler for Respondent.

SHINN, P. J.—The present action is against E. W. Robinson and his son, Ray Robinson, for damages for assault. Defendants filed a joint answer, in which Ray Robinson admitted striking plaintiff, but alleged as an affirmative defense to the action that he did so in self-defense. It was also alleged as a defense that any violence committed by defendants was provoked by plaintiff's vile and abusive language, and by his unlawful "interference" with E. W. Robinson. After an extended trial, the court made findings and entered judgment in favor of plaintiff and against both defendants for $8,500 compensatory damages and $1,000 exemplary damages. E. W. Robinson appeals from the judgment; Ray Robinson has not appealed.

Plaintiff was employed as a truck driver by John Ferroni, who transported race horses to and from various tracks in California during racing seasons; appellant was one of Ferroni's competitors. On the morning of October 11, 1954, plaintiff drove a van belonging to Ferroni to a railway station near the Hollywood Park race track in order to pick up some harness horses that were scheduled to arrive by train from the east. At the station was a dock which was used primarily for the loading and unloading of freight. Ayer parked the van beside the dock and went onto the dock to wait for the train. A driver named Armstrong arrived shortly thereafter in another van. Ayer testified that appellant approached him and asked him what he was doing on the dock. Ayer said that he was there to pick up horses that had been consigned to Ferroni and appellant replied that plaintiff had no business picking up horses at the station.

Ayer returned to the station the following day as the horses he was expecting did not arrive on the 11th. Ferroni came to the dock a few minutes later. Ayer and Ferroni testified that appellant approached them and demanded to know what they were doing on the dock; appellant told Ferroni that they had no right to be there because he had "the contract" to haul horses to and from the track. Ferroni replied that he had letters and telegrams authorizing him to pick up some horses

and transport them to the track. Ayer and Ferroni remained at the dock, but their horses did not arrive.

On the morning of the next day, October 13th, Ayer and Armstrong went to the station in separate vans; Ferroni arrived shortly thereafter. There were a number of people on the dock waiting for the train. Ayer waited near Armstrong's van. Plaintiff stated that a man whom he did not know, and who proved to be Ray Robinson, appellant's son, came up to him and asked him if he was the driver of Ferroni's van. When plaintiff said ''yes,'' Robinson said ''You'll have to move it.'' Ayer replied that he would not move the van until he picked up his horses, whereupon Robinson said: ''If you don't move it, I will.'' As Robinson started to walk down the dock toward the van, plaintiff told Ferroni what Robinson had said, and Ferroni began to walk rapidly after Robinson. Ferroni called out ''Hey Heavy,'' whereupon Robinson wheeled about and struck him on the head, knocking him to the ground. Robinson then jumped on top of Ferroni and began pounding him about the face and body. Plaintiff testified that while Robinson was hitting Ferroni, appellant was ''egging him on'' and shouted ''Hit him; kill the s.b.'' and ''Here is the other s.b.; get him too.'' Plaintiff ran up to the scene. Meanwhile, a man named Witt seized Robinson's arms and tried to pin them to his body. Robinson swung at Witt. Witt testified that appellant then shouted ''No, it is not him. It is that one over there'' and pointed to plaintiff. Robinson then hit plaintiff in the face, knocked him down, beat him about the face and body, picked him up and shoved him against the railing of the dock, and raised his fist to strike Ayer again, whereupon a Mr. French, an employee of the railroad, told him to stop or he would hit him with a crowbar. Armstrong testified that when French intervened, appellant called out: ''Let 'em go it.'' Plaintiff suffered severe personal injuries, including three broken ribs, as a result of the beating.

Appellant's version of the circumstances occurring on October 11th, 12th and 13th differed materially from the versions related by plaintiff and his witnesses. Appellant testified that on October 11th plaintiff parked Ferroni's van beside one of his own vans, making it impossible for him to load horses through the side gate. The van had room for eight horses, but only two could be loaded through the rear gate of the vehicle. Appellant asked plaintiff to move his van, but Ayer refused and became belligerent. The following day, plaintiff again parked his van in such a way as to prevent

appellant from loading horses through the side gate. When appellant asked Ayer and Ferroni to move their vehicle they swore at him and threatened to ''get'' him either at the station or at the race-track. However, within 15 or 20 minutes they did move their truck about 20 feet and Robinson loaded his horses. That night, appellant visited his son, who was a fireman employed by the city of Los Angeles. Appellant told him that two men had been blocking his van, and that they were going to ''get'' him; he did not identify Ayer and Ferroni by name. Appellant denied calling out to his son during the altercation; several other witnesses to the fight testified that they did not hear appellant say anything to his son.

It appears from appellant's testimony that he had asserted to Ferroni and Ayer that he had the exclusive right to load horses from the dock, which they denied. He stood by looking on while his son was mutilating both Ferroni and Ayer, uttered no remonstrance and made no attempt to interfere. He testified that while the fight was under way he said something to the effect that ''these are the two fellows that were trying to get me for three days.'' He had a grievance against Ferroni and Ayer because of the manner in which they parked their truck and because he claimed they were interfering with his business; they had none against him. The court would have been warranted in believing that he was not only pleased with the manner in which his son was handling the situation but actively encouraged him to assault Ayer.

Ray Robinson testified that he went to the dock on October 13th because he was concerned about his father. He did not know Ayer or Ferroni and had never seen them before. His father pointed them out to him at the dock. He hit Ferroni after the latter seized him by the shoulder from behind and spun him around; he only struck Ferroni once. Plaintiff ''jumped'' him and hit him in the stomach, so he struck back. He hit Ayer only two or three times. Several other witnesses called by the Robinsons testified that plaintiff was the aggressor.

The court found that ''the defendants wrongfully and violently assaulted plaintiff, struck and beat the plaintiff . . .'' and that ''defendants were, and each of them was, . . . guilty of a wilful, wanton, cruel and malicious attack'' on his person. The court also found the affirmative defenses alleged in the answer to be untrue.

The first assignment of error to be considered is that the evidence does not support the finding that appellant com-

mitted an assault upon Ayer for the reason that there was no evidence that he was guilty of striking plaintiff. The argument is without merit. ■ A party injured by an unjustified assault may recover damages not only from the actual assailant, but from any other person who aids, abets, counsels or encourages the assault. (*Turner* v. *Whittel*, 2 Cal.App.2d 585, 589 [38 P.2d 835]; *Boyajian* v. *Balian*, 7 Cal.App.2d 174, 176 [46 P.2d 199].) ■ Whether appellant aided and abetted his son in administering a severe beating to plaintiff was a question of fact to be resolved by the court. Although the evidence was in conflict, the court could conclude from the testimony of plaintiff and his witnesses that appellant urged and encouraged his son to attack plaintiff. This testimony, if believed, sufficiently supports the challenged finding.

■ It is next contended that the court erred in failing to make findings upon a material issue of fact. In this connection, appellant argues that the court should have made a finding as to the theory upon which he was to be held liable in damages, and that in failing to do so the court committed reversible error. We cannot agree. Appellant directs our attention to the established rule that where a cause is tried to the court, the court must make findings on all material issues of fact raised by the pleadings and the evidence. However, it is also well settled that where the court has made findings upon the material facts in issue, it need not make further findings upon the probative facts, as a finding of ultimate fact includes a finding of all probative facts necessary to sustain it. (*Fischer* v. *Ostby*, 127 Cal.App.2d 528, 531-532 [274 P.2d 221], and cases cited; 24 Cal.Jur. 968-969, 974-975.) It is contended that the court may have held appellant liable on the theory of *respondeat superior* or the theory that he advised and encouraged the assaults by his son. It is a specious argument. It is negatived by the pleadings, the remarks of the court and the fact that plaintiff developed by the testimony of appellant that his son did not work for him. The finding that the defendants assaulted plaintiff was one of ultimate fact, and a further finding that appellant participated in the assault by aiding and abetting his son would have been superfluous.

■ The final contention to be considered is that the award of $1,000 punitive damages against appellant was unwarranted for the reason that there was no evidence of malice. The argument cannot be maintained. ■ An award of punitive damages is proper where the assault has been wan-

tonly and maliciously committed, and the question of malice is one for the trier of fact. (*Herman* v. *Glasscock*, 68 Cal.App. 2d 98, 104 [155 P.2d 912].) ▊ We have already related the testimony respecting appellant's grievance against Ferroni and Ayer and his participation in the assault; it is unnecessary to repeat it. There was ample evidentiary basis for the finding that appellant was actuated by malice.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.