[No. D038608. Fourth Dist., Div. One. Jan. 8, 2002.]

RICHARD SUSAG et al., Plaintiffs and Appellants, v.
CITY OF LAKE FOREST et al., Defendants and Respondents.

1402

COUNSEL

Jeffrey S. Benice for Plaintiffs and Appellants.

Franscell, Strickland, Roberts & Lawrence and S. Frank Harrell for Defendants and Respondents.

OPINION

**McCONNELL, J.**—It is established that a person convicted of resisting or obstructing a peace officer (Pen. Code, § 148, subd. (a)) may not maintain an action for the violation of federal civil rights (42 U.S.C. § 1983 (section 1983)) based on the officers' conduct during the arrest, unless the conviction

has been set aside through appeal or other postconviction proceeding. We hold here that for public policy reasons, relief from a conviction under Penal Code section 148, subdivision (a) is also a prerequisite of state law battery and related claims arising from the alleged use of excessive force during the arrest. Accordingly, we affirm the judgment for the defendants on plaintiff Cory Susag's claims. We also affirm the judgment certain defendants obtained on plaintiff Richard Susag's section 1983 and related state law counts, on the ground they had no physical contact with him, and on plaintiff Carol Susag's loss of consortium claim.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The Susags operate an auto body shop in the City of Lake Forest (the City). On May 5, 1998, Christopher Thompson, a deputy sheriff for the County of Orange (the County), noticed that a car parked near the auto body shop had an expired registration. Deputy Thompson called for a tow truck, and, as he waited, Cory, Richard's son, approached him. Cory denied owning the car and left. However, after the car was hitched to the tow truck he returned with a set of keys and got into the driver's seat. Deputy Thompson ordered Cory out of the car several times, and Cory responded "you're not taking it" and "fuck you." Cory started the car and accelerated the engine.

Deputy Thompson pepper-sprayed Cory's eyes after he ignored additional orders to get out of the car. Apparently undeterred, he cursed at and pushed Deputy Thompson. Deputy Thompson called for assistance and then followed Cory into the auto body shop. Deputy Thompson ordered him outside, and he responded "over my dead body." Richard and his son Chad appeared and Deputy Thompson explained that Cory was under arrest. The Susags stationed themselves in the shop's office.

Deputy Sheriffs J. Bau, L. Lagaret, D. Walsh, E. Nichols, D. Martin, D. Ginther, F. Prado, B. Blakely and D. Munoz arrived. For safety reasons, Deputy Thompson asked Richard and Chad to leave the office while Cory was taken into custody. Chad complied, but Richard refused to leave. When it appeared that Cory intended to leave, Deputies Thompson and Walsh grabbed his arm. Richard then began yelling and trying to reach Cory. Deputies Bau and Lagaret handcuffed Richard and they and Deputy Prado removed him from the area. Cory held his arms out straight, but after "about a half minute of pulling on his arms" the deputies handcuffed him and took him into custody.

Cory was charged with the misdemeanor of resisting or obstructing a peace officer. (Pen. Code, § 148, subd. (a).) On January 15, 1999, a jury found him guilty of the offense.

---

[1]To avoid confusion, we refer to the Susags by their first names.

On March 10, 1999, Cory and Richard filed a complaint against the 10 deputies involved in the incident, the City, the County, the Orange County Sheriff's Department and the Orange County Sheriff-Coroner Department, for violation of their federal civil rights (section 1983), assault and battery and use of excessive force, false imprisonment and intentional infliction of emotional distress. Richard's wife Carol joined and sought damages for loss of consortium. The Susags alleged that Cory and Richard "suffered severe physical and emotional injuries as a result of unjustified, retaliatory physical beatings . . . ." The Susags also alleged that Deputy Thompson had threatened retaliation against them in conjunction with an unrelated investigation he conducted in 1997 into a customer complaint. Deputy Thompson allegedly told Richard and Chad "that if he ever had to come to [their] business premises again, . . . he would make sure . . . they would 'go to jail' and 'learn to appreciate his authority' or words to that effect."

The defendants successfully moved for summary judgment against Cory on the ground that his standing conviction under Penal Code section 148, subdivision (a) precludes this action as a matter of law. Additionally, Deputies Thompson, Nichols, Martin, Ginther, Walsh and Blakely obtained summary judgment on Richard's and Carol's claims on the ground they had no physical contact with Richard. The court denied the Susags' motion for a new trial and leave to file a first amended complaint, and this appeal followed.[2]

## DISCUSSION

### I

### *Standard of Review*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [26 Cal.4th 80a, 107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) " 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause

---

[2]The notice of appeal states the appeal is taken from a minute order granting summary judgment, which is a nonappealable order. However, in the interests of justice and to avoid delay, we treat the appeal as from a judgment. (*United Fidelity Life Ins. Co. v. Emert* (1996) 49 Cal.App.4th 941, 944 [57 Cal.Rptr.2d 14].)

of action or a defense thereto.' " (*Id.* at p. 849.) But "if the showing by the defendant does not support judgment in his favor, the burden does not shift to the plaintiff and the motion must be denied without regard to the plaintiff's showing." (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534 [80 Cal.Rptr.2d 94].) In determining whether these burdens have been met, we review the record de novo. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].)

## II

### *Effect of Cory's Conviction*

### A

■ "State courts look to federal law to determine what conduct will support an action under section 1983. [Citation.]"[3] (*Buenavista v. City and County of San Francisco* (1989) 207 Cal.App.3d 1168, 1174 [255 Cal.Rptr. 329].) "[S]tate law that would produce a different outcome [on a section 1983 claim] in state than in federal court must yield to federal law." (*County of Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 300 [87 Cal.Rptr.2d 441, 981 P.2d 68].)

■ In *Heck v. Humphrey* (1994) 512 U.S. 477 [114 S.Ct. 2364, 129 L.Ed.2d 383], the United States Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." (*Id.* at pp. 486-487 [114 S.Ct. at p. 2372], fn. omitted.)

By analogy, the court relied on the common law tort action of malicious prosecution, an element of which is termination of the prior criminal proceeding in favor of the accused. This requirement avoids a collateral attack on the conviction and relitigation of issues of probable cause and guilt, and protects the strong judicial policy against inconsistent resolutions arising from identical facts. The court concluded the "hoary principle that civil tort

---

[3]Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to [section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." (*Heck v. Humphrey, supra,* 512 U.S. at p. 486 [114 S.Ct. at p. 2372].)

The court instructed that "when a state prisoner seeks damages in a [section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." (*Heck v. Humphrey, supra,* 512 U.S. at p. 487 [114 S.Ct. at p. 2372].) To illustrate, the court observed that when the lawfulness of the arrest is an element of a state law crime of resisting arrest, a successful section 1983 action for use of excessive force during the arrest would necessarily imply the invalidity of the plaintiff's conviction. (*Heck,* at p. 486, fn. 6 [114 S.Ct. at p. 2372].)

█ In California, the lawfulness of an arrest is an essential element of the offense of resisting or obstructing a peace officer. (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1109 [50 Cal.Rptr.2d 351].) If the officer was not performing his or her duties at the time of the arrest, the arrest is unlawful and the arrestee cannot be convicted under Penal Code section 148, subdivision (a). (*People v. Olguin* (1981) 119 Cal.App.3d 39, 45 [173 Cal.Rptr. 663]; *In re Joseph F.* (2000) 85 Cal.App.4th 975, 982 [102 Cal.Rptr.2d 641].) "[E]xcessive force by a police officer . . . is not within the performance of the officer's duty." (*People v. Olguin, supra,* 119 Cal.App.3d at p. 44; *People v. White* (1980) 101 Cal.App.3d 161, 167 [161 Cal.Rptr. 541].)

█ Federal district courts have held that under *Heck v. Humphrey,* a plaintiff cannot maintain a section 1983 action for excessive force absent proof that his or her conviction under Penal Code section 148, subdivision (a) has been invalidated by appeal or other proceeding. (*Franklin v. County of Riverside* (C.D.Cal. 1997) 971 F. Supp. 1332, 1336; *Nuno v. County of San Bernardino* (C.D.Cal. 1999) 58 F.Supp.2d 1127, 1133-1134.) Because the lawfulness of the arrest is determined in the criminal action, "plaintiff's allegations that he was subjected to excessive force during his arrest, if proven, would necessarily imply the invalidity of his obstruction of a peace officer conviction. [Citation.]" (*Nuno v. County of San Bernardino, supra,* 58 F.Supp.2d at p. 1133.)

Cory contends the record in his criminal case, which is not before us, does not reflect which acts formed the basis for his conviction, and as a result he

can pursue his section 1983 action for the officer's use of pepper spray before he was ultimately subdued and placed in the patrol car. We disagree and conclude that any claim of excessive force based on discrete acts that occurred immediately preceding Cory's arrest is barred by the Supreme Court's holding in *Heck v. Humphrey, supra,* 512 U.S. 477, since a finding in his favor would necessarily imply the invalidity of his conviction under Penal Code section 148, subdivision (a).

Cory's reliance on *Hernandez v. City of Los Angeles* (9th Cir. 1980) 624 F.2d 935 (*Hernandez*), is misplaced. In *Hernandez,* the court held that a section 1983 plaintiff who had been convicted of violating Penal Code section 148, subdivision (a) was not collaterally estopped from relitigating the issue of excessive force. (*Hernandez,* at p. 938.) The court, however, did not address the public policy considerations discussed in *Heck v. Humphrey, supra,* 512 U.S. at pages 484-485 [114 S.Ct. at page 2371]. "In light of *Heck* [*v. Humphrey*] . . . it is highly questionable whether *Hernandez* is still good law; a finding that excessive force was used to arrest the plaintiff would, of necessity, undermine the validity of the plaintiff's conviction[] under [Penal Code section] 148." (*Franklin v. County of Riverside, supra,* 971 F.Supp. at p. 1337.) In *Heck v. Humphrey* the court cautioned that "[r]egardless of the state law concerning res judicata," a section 1983 action for excessive force will not lie when the plaintiff must negate an element of a conviction for resisting arrest. (*Heck v. Humphrey, supra,* 512 U.S. at p. 487, fn. 6 [114 S.Ct. p. 2372].)

Cory's reliance on *Sanford v. Motts* (9th Cir. 2001) 258 F.3d 1117, decided after *Heck v. Humphrey,* is also misplaced. In *Sanford,* the plaintiff alleged that after she was handcuffed and in custody for interfering with an arrest, an officer struggling with another person punched her in the face. The court concluded that a section 1983 claim based on the use of excessive force *after* an arrest was accomplished was not barred by *Heck v. Humphrey* since a judgment for the plaintiff would not imply the invalidity of her conviction for resisting arrest. Here, Cory has alleged no claims of excessive force that took place after he was finally subdued and placed in the patrol car. Once the defendants met their burden of proving Cory had an undisturbed conviction under Penal Code section 148, subdivision (a), the burden shifted to him to provide evidence of excessive force that would not necessarily imply the invalidity of his conviction. Since he failed to provide such evidence, the defendants were entitled to judgment as a matter of law on the section 1983 claim.

B

Cory does not address the effect of his conviction on his state law claims for assault and battery, intentional infliction of emotional distress and

false imprisonment. ▆ "[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat [an] issue as waived." (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126].) ▆ We have nonetheless elected to reach the issue.

▆ In California, it is established that proof of innocence of underlying criminal charges is an element of certain torts. For instance, to establish malicious prosecution of a criminal proceeding, the plaintiff must demonstrate the action was pursued to a legal termination in his or her favor. (*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 313 [105 Cal.Rptr.2d 790, 20 P.3d 1086]; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].) " ' "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused . . . ." ' [Citations.]" (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1854 [43 Cal.Rptr.2d 323].) The termination must "reflect[] on the merits of the action and the plaintiff's innocence of the misconduct alleged. [Citations.] When the proceeding terminates other than on the merits, the court must examine the reasons for termination to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed. If resolution of the underlying action leaves a residue of doubt about the plaintiff's innocence or liability, it is not a favorable termination sufficient to support a cause of action for malicious prosecution. [Citation.]" (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 [85 Cal.Rptr.2d 726].)

In *Wiley v. County of San Diego* (1998) 19 Cal.4th 532 [79 Cal.Rptr.2d 672, 966 P.2d 983] (*Wiley*), the court held that for public policy reasons, proof of actual innocence of underlying criminal charges is an element of a malpractice action against criminal defense counsel. The court explained that " ' "[p]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." ' " (*Id.* at p. 537.) Further, " 'allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict.' " (*Ibid.*) "Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss. [Citation.]" (*Id.* at p. 539.)

An issue left unresolved in *Wiley* was whether a further requirement of a criminal malpractice action is that the conviction has been set aside through

appeal or other postconviction proceeding. (*Wiley, supra,* 19 Cal.4th at pp. 536-537, fn. 2.) In *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 48 [170 Cal.Rptr. 533], the court impliedly imposed such a requirement, holding in a criminal malpractice action that the collateral estoppel doctrine precluded relitigation of guilt when the plaintiff remained convicted of federal crimes.[4] (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201 [108 Cal.Rptr.2d 471, 25 P.3d 670] (*Coscia*).)

In *Coscia*, the court held that under the public policies reviewed in *Wiley*, "an individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief . . . to establish actual innocence in a criminal malpractice action." (*Coscia, supra,* 25 Cal.4th at p. 1201.) The court further held that "an intact conviction precludes recovery in a legal malpractice action even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues. [Citation.]" (*Id.* at p. 1204, citing *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605-606 [25 Cal.Rptr. 559, 375 P.2d 439].) The court explained the requirement of exoneration promotes judicial economy and " ' " "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.]' [Citation.]" (*Coscia,* at p. 1204, citing *Heck v. Humphrey, supra,* 512 U.S. at p. 484 [114 S.Ct. at p. 2371].)

Here, the public policy concerns addressed in *Wiley* and *Coscia* are equally compelling. Permitting Cory to pursue state tort claims notwithstanding a conviction under Penal Code section 148, subdivision (a) would potentially allow him to profit by his own wrongdoing. The lawfulness of the officers' conduct was established in the criminal proceeding, and a contrary result in the civil action would " ' " " 'shock the public conscience, engender disrespect for courts and generally discredit the administration of justice.' " [Citations.]' [Citations.] ' "[C]ourts will not assist the participant in an illegal act who seeks to profit from the act's commission." ' [Citation.]" (*Wiley, supra,* 19 Cal.4th at p. 537.) "A plaintiff convicted of an offense should bear sole responsibility for the consequences of his or her criminal acts." (*Coscia, supra,* 25 Cal.4th at p. 1200.)

Moreover, it appears unsound to distinguish between section 1983 and state law claims arising from the same alleged misconduct. Section 1983

---

[4]The collateral estoppel doctrine, an aspect of res judicata, generally precludes relitigation of an issue previously adjudicated if certain criteria are met: "(1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.]" (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920].)

creates a species of tort liability (*Heck v. Humphrey, supra,* 512 U.S. at p. 483 [114 S.Ct. at p. 2370]) and is described as "the federal counterpart of state battery or wrongful death actions. [Citation.]" (*Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1274 [74 Cal.Rptr.2d 614].) To make a prima facie case for either battery by a police officer or violation of section 1983, the plaintiff must demonstrate the unreasonableness of the force used. (*Edson v. City of Anaheim, supra,* at pp. 1272-1273.) "The federal practice [of requiring proof of unreasonableness in plaintiff's affirmative case] is all the more significant because plaintiffs sometimes join federal and state claims against police defendants, either in federal or state court. [Citations.] To avoid jury confusion and to ease judicial administration, it makes sense to require plaintiff to prove unreasonable force on both claims." (*Id.* at p. 1274; see also *Saman v. Robbins* (9th Cir. 1999) 173 F.3d 1150, 1156-1157 [section 1983 and state law battery claims require same evidentiary showing].)

We conclude that Cory's state law claims are precluded by his standing conviction for resisting or obstructing a peace officer. Indeed, there is stronger cause to require postconviction relief as an element of a civil suit based on the use of excessive force than in a criminal malpractice action. In the former context, the reasonableness of the officers' conduct has already been determined in the criminal proceeding. In contrast, the alleged negligence of defense counsel is not at issue in the criminal case. It would be anomalous to require postconviction relief as a prerequisite to the litigation of defense counsel's alleged negligence, but not the *relitigation* of the reasonableness of the officers' force.[5]

## III

### *Richard's Claims*

#### A

█ Richard's section 1983 claim is based on the alleged use of excessive force and false imprisonment in violation of his rights under the Fourth Amendment to the United States Constitution. The deputies dismissed on summary judgment contend they are qualifiedly immune from liability because the undisputed evidence shows they had no physical contact with Richard. █ "A government official is qualifiedly immune from [section] 1983 liability unless his [or her] conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have

---

[5]Given our holding, we need not determine whether Cory's state law claims are precluded by the doctrine of collateral estoppel. (See *Wiley, supra,* 19 Cal.4th at p. 549 (dis. opn. of Mosk, J.); *Weiner v. Mitchell, Silberberg & Knupp, supra,* 114 Cal.App.3d 39.)

known.' [Citation.]" *(Picray v. Sealock* (9th Cir. 1998) 138 F.3d 767, 771, citing *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396].)

■ "The Fourth Amendment protects individuals against 'unreasonable searches and seizures.' To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.' [Citation.]" *(Bella v. Chamberlain* (10th Cir. 1994) 24 F.3d 1251, 1255.) "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen[.]' [Citations.]" *(Graham v. Connor* (1989) 490 U.S. 386, 395, fn. 10 [109 S.Ct. 1865, 1871, 104 L.Ed.2d 443].) "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *(Id.* at p. 397 [109 S.Ct. at p. 1872].)

■ In support of the summary judgment motion, Deputy Thompson submitted a declaration describing the incident and stating that Deputies Bau and Lagaret held Richard's hands behind his back and handcuffed him, and they and Deputy Munoz removed him from the office at the auto body shop. In a later declaration, Thompson stated: ". . . I misspoke when I identified Deputy Munoz as assisting in the removal of Richard . . . from the scene of Cory[']s arrest. . . . Upon further reflection on the issue, it was Deputy Prado, along with Deputies Bau and Lagaret, who participated on the removal of Richard."

Richard contends the defendants did not satisfy their initial burden of persuasion because Deputy Thompson did not expressly state that he and Deputies Nichols, Martin, Ginther, Walsh and Blakely used no physical force against Richard. However, in ruling on a summary judgment motion the court must consider all inferences reasonably drawn from the evidence. *(Aguilar, supra,* 25 Cal.4th at p. 843.) In his declarations Deputy Thompson recounted the incident in detail, and it is reasonably inferred that only the deputies he expressly identified were involved in the scuffle with Richard. The defendants' evidence shifted the burden to Richard to " 'set forth the specific facts showing that a triable issue of material fact exists as to [the] cause of action or a defense thereto.' [Citation.]" *(Id.* at p. 849; Code Civ. Proc., § 437c, subd. *(o)*(2).)

In his separate statement, Richard stated there were triable issues of fact regarding the deputies' use of excessive force.[6] However, he produced no supporting evidence. He relied on his deposition testimony, but he merely stated that three deputies used force against him; he did not name the officers. He also cited the declarations of a retired police officer he retained as an expert witness, Deputy Thompson and other percipient witnesses, none of whom suggested that the deputies dismissed on summary judgment had any physical contact with him.

Richard asserts he submitted evidence of Deputy Thompson's "actual participation in . . . the use of excessive force" against him, but he relies on allegations of the complaint.[7] In opposing a summary judgment motion, the plaintiff may not rely on the mere allegations or denials of its pleadings to show that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (*o*)(2).) Richard cites the declaration of Deputy Thompson, but he stated he grabbed *Cory's* arm during the incident. He did not state he had any physical contact with Richard.

Deputies Thompson, Nichols, Martin, Ginther, Walsh and Blakely were entitled to summary judgment on Richard's section 1983 cause of action because he did not meet his burden of producing evidence showing they used physical force against or exerted authority over him that resulted in a " 'seizure' " under the Fourth Amendment. (*Graham v. Connor, supra,* 490 U.S. at p. 395, fn. 10 [109 S.Ct. at p. 1871].) We also conclude this lack of evidence defeats Richard's state law claims as a matter of law: (1) a prima facie element of a battery claim against a police officer is the use of unreasonable force (*Edson v. City of Anaheim, supra,* 63 Cal.App.4th at pp. 1272-1274); (2) the count for intentional infliction of emotional distress is derivative of the battery count; and (3) a false imprisonment action is based on the officer's unlawful physical restraint or confinement of the plaintiff. (*County of Los Angeles v. Superior Court* (2000) 78 Cal.App.4th 212, 219 [92 Cal.Rptr.2d 668].)[8]

---

[6]The Susags' separate statement violates California Rules of Court, rule 342(f) by not setting forth verbatim the defendants' undisputed facts and supporting evidence, not stating unequivocally whether the defendants' facts are "disputed" or "undisputed," and not stating the nature of the dispute or describing the evidence supporting the position that the fact is controverted. The Susags' failure to comply with these requirements made the trial court's task substantially more difficult, and may have constituted a sufficient ground for the court, in its discretion, to grant the motion for summary judgment. (Code Civ. Proc., § 437, subd. (b); *Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 734-735 [274 Cal.Rptr. 14].)

[7]The Susags also admit, however, that the deputies dismissed on summary judgment "were present and did nothing."

[8]Because Carol's loss of consortium claim is triggered by Richard's alleged injury, disposal of her case on summary judgment was also proper. (See *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 162 [233 Cal.Rptr. 308, 729 P.2d 743].)

## B

We reject Richard's contention that summary judgment was improper because the deputies can be liable for using excessive force even if they had no physical contact with him. He cites *Ayer v. Robinson* (1958) 163 Cal.App.2d 424, 428 [329 P.2d 546], for the proposition that a "party injured by an unjustified assault may recover damages not only from the actual assailant, but from any other person who aids, abets, counsels or encourages the assault." The complaint, however, includes no cause of action based on an aiding and abetting theory of liability. In a summary judgment motion, the pleadings delimit the scope of the issues. (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 67 [15 Cal.Rptr.2d 598].) At any rate, Richard's argument is without merit because he submitted no evidence that the deputies dismissed on summary judgment directed or encouraged the use of excessive force.

Further, we do not entertain Richard's cursory assertion that "[a]lternatively, the trial court should have granted [him] leave to amend the complaint to correct the purported pleading defect," and "[i]ts failure to do so is an abuse of discretion." He does not cite to his motion for leave to amend or explain how the court ostensibly abused its discretion. ■ "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627.) Accordingly, where a party provides a brief "without argument, citation of authority or record reference establishing that the points were made below," we may "treat the points as waived, or meritless, and pass them without further consideration." (*Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712].)

### DISPOSITION

The judgment is affirmed. The defendants are awarded costs on appeal.

Kremer, P. J., and McDonald, J., concurred.

A petition for a rehearing was denied February 5, 2002, and appellants' petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein.