[No. B218145. Second Dist., Div. Six. Nov. 3, 2010.]

YVETTE LUJANO, a Minor, etc., Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

**COUNSEL**

Esparza Law Group and Luis Esparza for Plaintiff and Appellant.

Dennis Marshall, County Counsel, and Michael M. Youngdahl, Deputy County Counsel, for Defendants and Respondents.

**O**PINION

**PERREN, J.**—Yvette Lujano, through her guardian ad litem, Maria del Carmen Lujano, appeals an order granting summary judgment to the County of Santa Barbara (County) and two Santa Barbara County Sheriff's Department deputies on her complaint for false arrest and use of excessive force. We affirm.

## *STATEMENT OF FACTS AND PROCEDURAL HISTORY*

On June 2, 2006, respondents Bryan Munana and Mark Ward, along with a third sheriff's deputy and two Regents of the University of California (Regents) police officers were dispatched to an apartment building in Isla Vista in response to a call by Lujano's mother that Lujano had been beaten up in a fight with several other girls.

When the deputies arrived, Lujano was standing outside the building with her cousin, Susana, and her brother, Rufino. Rufino was wearing a white tank top with a red stain on the front that Deputy Munana thought was blood. As the officers approached them, the three individuals turned around and walked down a passage between the apartment buildings. Munana parked his vehicle and followed them. He saw Lujano and Susana enter Lujano's residence. Rufino stopped outside the residence when commanded to do so by Munana. As Munana was talking to Rufino, Lujano stepped out of the apartment and protested Rufino's detention in a loud, angry voice. Lujano's mother arrived and joined her daughter in protesting Rufino's detention. A crowd, including gang members, formed to watch the confrontation.

Deputy Ward arrived and separated Lujano from her brother by walking her a few steps to the side without touching her. Ward told Lujano they were conducting an investigation and that she was preventing them from doing their jobs. He warned her she would be arrested if she continued to obstruct the investigation. Lujano failed to heed the warning, and Munana arrested Lujano for obstructing the investigation. (Pen. Code, § 148.)

Munana ordered Lujano to place her hands behind her back. At the same time, he reached for her left wrist to guide it behind her for handcuffing and to move her further away from Rufino. Lujano attempted to pull her hands away from Munana, but he was able to grasp her left wrist. Lujano continued to resist, and Munana briefly lost his grip on her wrist. University of California Police Officer Seth Clark grabbed Lujano's right arm, and Munana then regained control of her left arm. The officers pushed Lujano's arms behind her back for handcuffing.

During the process of handcuffing, Lujano's hair caught on one of the officer's arms. Lujano attempted to release her hair by turning and pulling her head and raising her right arm. Munana and Clark thought Lujano was attempting to escape. Clark pulled Lujano's right arm toward the lower portion of her back. Munana continued to hold Lujano's left arm and secured the handcuffs. Once in handcuffs, Lujano complained of pain in her right hand and upper arm. Ward was not involved in making the arrest.

Munana drove Lujano to the Isla Vista patrol station and then to Goleta Valley Hospital where she was diagnosed and treated for a broken right arm. She was booked into juvenile hall that evening on the Penal Code section 148 charge. The charge was resolved by Lujano's agreement to six months of informal probation under Welfare and Institutions Code section 654.

Lujano filed a complaint based on the arrest against the County, Munana and Ward, and against the Regents and Clark. She alleged state law and 42 United States Code section 1983 (section 1983) claims for false arrest, battery, negligence, intentional infliction of emotional distress, excessive force, and "acts or omissions of public employees."[1]

All parties moved for summary judgment or in the alternative for summary adjudication. The court granted the County defendants' motion for summary judgment. The court reasoned: "[S]ince the underlying criminal charge did not terminate in [Lujano's] favor, a favorable judgment in this action would be inconsistent with her agreement to probation to dispose of that criminal matter (*Heck v. Humphrey* (1994) 512 U.S. 477 [129 L.Ed.2d 383, 114 S.Ct. 2364]) and . . . there was probable cause to arrest her and the force used to take her into custody was reasonable." The court also ruled that Munana and Ward were entitled to qualified immunity from section 1983 liability, finding that "Deputy Munana merely grasped [Lujano's] left wrist to handcuff her. Deputy Ward did not even participate in the arrest." The court concluded that the County could not be liable under either section 1983 or state law because neither of the individual defendants had violated Lujano's rights.[2]

On appeal, Lujano asserts that granting summary judgment was error as to the excessive force claim because a jury could infer that Munana caused

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] The trial court denied the Regents' and Clark's motion for summary judgment, while granting them summary adjudication on the state and federal law false arrest causes of action. They are not parties to this appeal.

injury to Lujano's right arm while grabbing her left arm and Ward may be liable because he failed to prevent a fellow officer from physically assaulting Lujano.

## DISCUSSION

### The Trial Court Did Not Err in Granting Summary Judgment.

#### Standard of Review

"A 'party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he . . . is entitled to judgment as a matter of law.' [Citation.] A defendant satisfies this burden by showing ' "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" ' to that cause of action. [Citation.] ' "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." ' [Citation.] . . . In determining whether these burdens have been met, we review the record de novo. [Citation.]" (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1407–1408 [115 Cal.Rptr.2d 269].)

As " 'a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court. [Citation.]' [Citation.]" (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [4 Cal.Rptr.3d 785].)

#### Lack of Favorable Termination Bars Claim

In *Yount v. City of Sacramento* (2008) 43 Cal.4th 885 [76 Cal.Rptr.3d 787, 183 P.3d 471] (*Yount*), our Supreme Court held, consistent with *Heck v. Humphrey, supra*, 512 U.S. 477 (*Heck*), that a plaintiff cannot maintain a section 1983 civil rights claim for excessive force absent proof that her conviction under Penal Code section 148, subdivision (a), has been invalidated by appeal or other proceeding.[3] *Yount* applied this rule to a no contest plea. (*Yount, supra*, at pp. 894–895.)

---

[3] In the trial court, Lujano's counsel agreed that *Heck* barred Lujano's excessive force claims. On appeal, Lujano makes no argument concerning the applicability and effect of *Heck* in her opening brief. She has not filed a reply brief countering respondents' arguments in this regard. For this reason alone, we may deem the issue abandoned. (*Spitler v. Children's Institute International* (1992) 11 Cal.App.4th 432, 442 [14 Cal.Rptr.2d 197].) However, we have

■ In reaching its decision, our Supreme Court noted that the favorable termination requirement of *Heck* is based on a similar requirement in civil malicious prosecution actions. It stated: "Our discussion begins with *Heck* . . . which first established that a section 1983 claim calling into question the lawfulness of a plaintiff's conviction or confinement is not cognizable until the conviction or confinement has been invalidated. [Citation.] *Heck* analogized a section 1983 claim in such circumstances to the common law cause of action for malicious prosecution, which similarly includes the termination of the prior criminal proceeding in favor of the accused as an element of the cause of action. 'This requirement "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.] Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." [Citation.] This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack [citations]. ■ We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to [section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.' [Citation.] Thus, 'in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus [citation].' [Citation.]" (*Yount, supra*, 43 Cal.4th at pp. 893–894, quoting *Heck, supra*, 512 U.S. at pp. 483–487.)

■ Here, Lujano avoided being prosecuted on the criminal charge by agreeing to six months' informal probation under section 654. That section authorizes a probation officer to place a minor on a program of informal supervision if, "after investigation of an application for a petition" to make a minor a ward of the court under section 602, the officer concludes that the minor is or will soon be within the jurisdiction of the juvenile court. The

---

discretion to consider controlling questions of law on appeal whether raised by counsel or not. (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 957, fn. 3 [17 Cal.Rptr.2d 242].)

juvenile court has jurisdiction under section 602 when a minor violates a law defining a crime. The alternative to informal probation under section 654 is to file court proceedings. (*Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 746 [187 Cal.Rptr. 144, 653 P.2d 648].)

■  Accepting informal probation is not a favorable termination allowing for civil tort liability. (See *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, 826 [71 Cal.Rptr.2d 802] [Favorable termination of a criminal case sufficient to support a malicious prosecution cause of action must reflect plaintiff's innocence of the misconduct. If the resolution leaves some doubt concerning plaintiff's innocence, it is not a favorable termination.]; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 881 [6 Cal.Rptr.2d 151] [For a termination to be favorable it must reflect " ' "the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant." ' "]; see also *Nuno v. County of San Bernardino* (C.D.Cal. 1999) 58 F.Supp.2d 1127, 1136–1137 ["Absent an allegation in the [complaint] that the plaintiff's [Penal Code] section 148 conviction has been reversed on appeal, expunged by executive order, invalidated by a state tribunal or is called into question by a . . . writ of habeas corpus, plaintiff simply has no section 1983 cause of action . . . ."]; *Susag v. City of Lake Forest, supra*, 94 Cal.App.4th at p. 1411 [" 'If resolution of the underlying action leaves a residue of doubt about the plaintiff's innocence or liability, it is not a favorable termination sufficient to support a cause of action for malicious prosecution.' "].)

■  Lujano's acceptance of informal probation in resolving the juvenile court action was not a "favorable termination" of that action, and bars her claim for civil damages arising from her arrest.[4] The *Heck* rule disposes of Lujano's state law claims as well. (*Yount, supra*, 43 Cal.4th at p. 902.)[5]

In her petition for rehearing, Lujano asserts that under our analysis a juvenile who accepts informal probation under section 654 "could never prevail in a lawsuit claiming that excessive force was used to effectuate a lawful arrest." This conclusion posits three possible outcomes when management under section 654 is considered: (1) proceed with section 654 management, (2) file a section 602 petition, or (3) close the investigation without further action. There is, however, a fourth option: The minor and the minor's "parent or guardian" may refuse to accept informal probation. (§ 654.) The

---

[4] In *Yount* the action went forward because the officers allegedly used deadly force (shooting) which was unjustified. There is no claim that such force was used in the instant matter.

[5] Lujano makes no argument concerning the County's liability. We deem the point waived. (*Spitler v. Children's Institute International, supra*, 11 Cal.App.4th at p. 442.)

probation officer would then determine whether to seek the filing of a petition or close the file.[6] (§ 653.5.)

Lujano accepted section 654 management. In doing so, she consented to participate in counseling or education programs as well as, inter alia, temporary placement in shelter care facilities should that be merited. (§ 654, subd. (a).) Moreover, successful completion of the specific program or programs delineated under section 654 would result in a bar to further prosecution for the offense. (§ 654.2, subd. (a); Cal. Rules of Court, rule 5.514(e)(2).) Having elected to proceed under section 654, having submitted to the power of the state and its programs for counseling and education, and having obtained a shield to further prosecution upon successful completion of the program, Lujano may not now complain that she is barred from seeking civil redress under section 1983. Her option was to deny her culpability and put the state to its proof. (*Yount, supra,* 43 Cal.4th at p. 897.) What she may not do is take advantage of the leniency of the state and thereafter pursue a civil claim for damages.

### No Triable Issue of Fact as to Police Officer Liability for Excessive Force

Our analysis disposes of Lujano's excessive force claims as a matter of law. Nonetheless, we briefly address her contention that summary judgment was improperly granted because a jury could find that deputies Ward and Munana used excessive force in arresting her. The contention is without merit. Deputy Ward did not participate in the arrest.

In *Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 939, the court unequivocally "reject[ed] the idea that mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983." (See also *Chuman v. Wright* (9th Cir. 1996) 76 F.3d 292, 294 [being a mere bystander to colleagues' conduct insufficient to support § 1983 liability].) Ward cannot be liable for excessive force unless he had a realistic opportunity to intercede. (*Ibid.*)

An officer's duty to intervene does not arise until a person's constitutional rights are being violated in the officer's presence and there must be sufficient time to do so. (*O'Neill v. Krzeminski* (2d Cir. 1988) 839 F.2d 9, 11.) A claim of excessive force is analyzed under the framework set forth by the Supreme

---

[6] Lujano did not allege that any exception to the *Heck* rule applied and she did not request a *Heck* hearing to prove that the alleged excessive force was independent of the crime for which she was charged. (*Heck v. Humphrey, supra,* 512 U.S. 477; *Yount, supra,* 43 Cal.4th at pp. 895–896.)

Court in *Graham v. Connor* (1989) 490 U.S. 386 [104 L.Ed.2d 443, 109 S.Ct. 1865]. That analysis "requires a careful balancing of ' "the nature and quality of the intrusion [on a person's liberty with]" ' . . . the countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. (*Id.* at p. 396.)

Here, there were no facts or circumstances which would have led Deputy Ward to believe that Lujano's constitutional rights were being violated. The undisputed evidence shows that the officers who arrested Lujano merely placed her arms behind her back for handcuffing, using the force necessary to restrain her when she resisted. Lujano did not indicate that her right arm had been injured until she was being driven to the police station. No reasonable trier of fact could find either that Deputy Ward knew that Lujano's constitutional rights were being violated by others or that he had a realistic opportunity to intercede to prevent the violation.

■ The undisputed facts show that Deputy Munana did no more than hold Lujano's left wrist and push her left arm behind her back for handcuffing. Without more, he cannot be liable for using excessive force. In *Chuman v. Wright, supra,* 76 F.3d at page 295, the Ninth Circuit rejected "the 'team effort' standard [that] allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct."

There are no facts that Deputy Munana did anything other than use the force necessary to restrain Lujano so that she could be handcuffed. There are no facts showing that he knew or should have known that her right arm had been injured during the arrest. Summary judgment was properly granted because Deputy Munana himself did not use excessive force in handcuffing Lujano.

The judgment is affirmed. Respondents shall recover costs on appeal.

Yegan, Acting P. J., and Coffee, J., concurred.

A petition for a rehearing was denied December 30, 2010, and on December 3, 2010, and December 30, 2010, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 16, 2011, S189731. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.