Filed 12/4/14  P. v. Mancilla CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE | B252532 |
| Plaintiff and Respondent; | (Super. Ct. No. BA401936) |
| v. | |
| OSBALDO MANCILLA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Craig Richman, Judge.  Affirmed.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Osbaldo Mancilla appeals from his conviction on two counts of resisting arrest and other charges, contending that: (1) the trial court erred by not instructing the jury that he was not guilty of resisting arrest if the officers used excessive force; and (2) that his lawyer was ineffective for not requesting that instruction and not preparing a defense on that theory. We reject both contentions and therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

At around 12:15 p.m. on June 25, 2012, paramedics were called to a Goodwill facility in San Fernando after Goodwill workers noticed Osbaldo Mancilla moaning in pain and rubbing his stomach. After Mancilla was placed on a gurney he became combative, flailed his arms around, and then ran off. One hour later Mancilla drove his car through a pedestrian breezeway outside the Goodwill building and crashed through the front door. Lyn Mayer had just stepped out the front door as Mancilla approached and moved out of the way to avoid being hit. Seconds before, as Mancilla approached the breezeway, he sped perilously close to a bench occupied by Valencia Walton and Maria Rodriguez, nearly clipping the women before they jumped out of the way.

Los Angeles Police Officers Fernandez, Tuck, Ruano, and Ramirez came to the scene and quickly found Mancilla in the nearby flood control channel. Fernandez and Tuck arrived first. They approached Mancilla, identified themselves as police officers, and ordered Mancilla to stop and get on the ground. When Mancilla kept walking away quickly, Fernandez repeated his orders and grabbed Mancilla's wrist. Mancilla tried to pull away and the officers pushed him face down onto the ground. The officers kneeled on Mancilla's back and shoulders. Mancilla shouted, "Fuck you. You're going to have to kill me. Kill me. Throw me in the river."

Fernandez and Tuck tried to isolate Mancilla's hands because they were underneath his belly and they were concerned that he might have a weapon. Mancilla "rose up and physically threw" both officers off his back. The officers' combined weight was 470 pounds. According to Fernandez, Mancilla was now in a better position to fight, run, or use a weapon if he had one. Fernandez punched Mancilla in the face in order to

2

bring him back down on the ground. Doing so would give the officers more time and more options and would prevent Mancilla from hurting them, according to Fernandez. The officers told him several times in both English and Spanish to give them his hands and not to resist. At this point Officers Ruano and Ramirez joined Tuck and Fernandez in using their body weight to keep Mancilla pinned.

Mancilla kept trying to elbow the officers, successfully landing blows to both Tuck and Ruano. Fernandez warned Mancilla that he would apply a taser unless Mancilla complied, but Mancilla kept flailing and trying to buck the officers off his back. Fernandez then tasered Mancilla by pressing the device against his lower back. Mancilla told the officers not to do that again and then complied long enough to be handcuffed. After Mancilla had been handcuffed and was lying on his back, he flipped over again and began kicking, striking Fernandez once or twice. The officers applied a hobble restraint to stop the kicking, and Mancilla was then taken into the emergency room. According to Fernandez, the officers' use of force complied with department guidelines and their training.

Mancilla was charged with and convicted of two counts of assault with a deadly weapon for driving his car toward Mayer and Walton, two counts of resisting arrest under Penal Code section 69, and one count of felony vandalism.

### DISCUSSION

1. *There Was Insufficient Evidence to Require an Excessive Force Instruction*

Mancilla was convicted on two counts of violating Penal Code section 69, which makes it unlawful to knowingly resist by force or violence an executive officer in the performance of his lawful duties.[1] Lawfulness of the arrest is an essential element of this offense. (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1409.) If the officer was not performing his duties at the time, the arrest was unlawful and the arrestee cannot

---

[1]    All further section references are to the Penal Code.

3

be convicted of violating section 69. (*Ibid.*) An arrest made with excessive force is not within the performance of an officer's duties. (*Ibid.*)

If there is substantial evidence that an arrest was made with excessive force, the trial court has a sua sponte duty to instruct the jury on that issue. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1217, superseded by statute as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.) Mancilla contends that even though his trial lawyer did not request such an instruction, the trial court erred by not giving it anyway because there was substantial evidence that the arresting officers used excessive force.[2] We disagree.

In the context of civil actions arising under federal civil rights (42 U.S.C. § 1983) or state tort law, an officer may use reasonable force to make an arrest, prevent escape, or overcome resistance, and need not relent in the face of resistance. (*Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1102 [wrongful death action claiming police used excessive force], disapproved on another ground by *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639, fn. 1.) Police officers act under color of law to protect the public interest and are charged with acting affirmatively and using force as part of their duties. (*Id.* at p. 1109.) Because a police officer is exercising the privilege of protecting the public peace and order, he is allowed to use greater force than might be considered sufficient for self-defense. (*Ibid.*)

In the context of civil actions claiming that a plaintiff's constitutional rights were violated by the use of excessive force, we examine several factors: (1) the nature and quality of the force used; (2) the severity of the suspect's crime; (3) whether the suspect posed an immediate threat to the safety of the officers or others; and (4) whether the suspect was actively resisting arrest or trying to flee. Of these, the threat posed to the officers or others is the most important, and is measured objectively under all the circumstances. (*Mattos v. Agarano* (9th Cir. 2011) 661 F.3d 433, 441-442; *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 711-712.)

---

[2] The relevant instruction is CALCRIM No. 2670, which also tells the jury that the prosecution has the burden of proof on this issue.

CALCRIM No. 2670 does not define what constitutes reasonable or excessive force by a police officer in this context, and the few reported decisions in this area offer little guidance. Respondent cites *People v. Ghebretensae* (2013) 222 Cal.App.4th 741, which held that there was insufficient evidence of excessive force to require giving CALCRIM No. 2670. *Ghebretensae* in turn cited two federal appellate decisions arising under federal civil rights law that applied the test set forth above. (*Ibid.,* citing *Robinson v. Solano County* (9th Cir. 2002) 278 F.3d 1007, 1013-1015; *Jackson v. Sauls* (11th Cir. 2000) 206 F.3d 1156, 1171-1172.) In the absence of other authority, we employ the same test here.

Mancilla contends that after Fernandez's initial attempt to stop him by grabbing his wrist failed, he and the other officers engaged in an ever-escalating spiral of excessive force. He contends the officers punched him without cause after he tried to get up, that because there was no sign he had a weapon the officers should have done nothing more than control his hands until they determined no weapon existed, and that the officers tasered him and continued their use of physical force even though he was down on the ground. He also contends that his kicking and arm flailing could have been viewed by a jury as acts of self-defense against the officers' excessive force. He also points to the fact that he was taken to the hospital as proof that excessive force was used. That evidence did not sufficiently suggest excessive force.

Analogizing to *People v. Soto* (1969) 276 Cal.App.2d 81 and *People v. Olguin* (1981) 119 Cal.App.3d 39, Mancilla contends the evidence here was sufficient to call for the CALCRIM No. 2670 excessive force instruction. His reliance on these decisions is misplaced. Both involved testimony by the defendant, which, if believed, showed that the officers used excessive force. Here, Mancilla did not testify or offer other evidence in his defense. The only evidence concerning what happened came from the arresting officers.

We see only one inference from the officers' testimony: that they were faced with a very strong, combative suspect who refused to comply with their directions to stop, and whose resistance posed a threat to the officers' safety that justified the force used to

5

subdue him.  Mancilla had just intentionally driven his car into a building, narrowly missing three people who had to move out of his way.  He did not comply with the officers' request to stop, and pulled away when Fernandez grabbed his arm.  Pushing Mancilla to the ground was not unreasonable in light of those circumstances.  From that point on, it was Mancilla's behavior that spiraled out of control, with him telling the officers to kill him and then mustering enough strength to toss 470 pounds worth of police officers off his back as they tried to isolate his hands to look for weapons.  Once on his feet, Mancilla was poised to either fight or flee.

It took the combined might of four officers to subdue Mancilla, who, even after being tasered, continued to struggle, kick, and flail at the officers.  Nothing in this evidence could reasonably lead a jury to find that the officers used excessive force.  We therefore conclude that the trial court had no duty to instruct the jury with CALCRIM No. 2670.

2. *Ineffective Assistance of Counsel Claim*

Mancilla contends that he received ineffective assistance of counsel because his trial lawyer did not investigate the excessive force issue in order to present it as a defense at trial and did not request CALCRIM No. 2670.  In assessing this claim we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and, if so, whether it is reasonably probable that Mancilla suffered prejudice as a result.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1189 (*Carter*).)

We indulge a presumption that trial counsel's performance was not incompetent and that her actions can be explained as a matter of sound trial strategy.  (*Carter, supra,* 36 Cal.4th at p. 1189.)  Mancilla bears the burden of establishing that he received ineffective assistance of counsel.  (*Ibid.*)  If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, we will reject a claim of ineffective assistance of counsel unless counsel was asked for an explanation and failed

6

to provide one, or there can be no satisfactory explanation.  (*Ibid.*)  Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.  (*Ibid.*)

Because the appellate record shows that there was insufficient evidence to require the trial court to instruct the jury on excessive force, we hold that Mancilla's trial counsel was not ineffective in that regard.  (*People v. Jennings* (2010) 50 Cal.4th 616, 667, fn. 19.)  As for counsel's asserted failure to investigate the issue and prepare an adequate defense on the ground that the officers used excessive force, Mancilla offers nothing from the appellate record to show what such an investigation might have revealed.  We cannot assume from a silent record what evidence or witnesses might have been produced and cannot speculate concerning the probable substance of such testimony.  (*People v. Medina* (1995) 11 Cal.4th 694, 773.)  We therefore also affirm as to that issue.[3]

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

---

[3]     Mancilla filed a companion habeas corpus petition (B256005) in which these issues were fully developed.  We summarily denied the petition by a separate order.