[No. B160288. Second Dist., Div. Four. Sept. 18, 2003.]

CALIFORNIA SCHOOL OF CULINARY ARTS, Plaintiff and Respondent,
v.
ARTHUR LUJAN, as Labor Commissioner, etc., et al., Defendants and
Appellants.

## Counsel

Anne Stevason, H. Thomas Cadell and William Reich for Defendants and Appellants.

Morgan, Lewis & Bockius and Andrew C. Peterson for Plaintiff and Respondent.

## Opinion

**VOGEL, P. J.—**

### INTRODUCTION

Appellants Arthur Lujan, as Labor Commissioner of the State of California, and the Division of Labor Standards Enforcement of the California Department of Industrial Relations appeal a summary judgment in favor of respondent California School of Culinary Arts declaring respondent is exempt from paying its instructor employees one and one-half times the regular rate of pay for hours worked in excess of eight hours in any one day.[1]  The issue before us is whether CSCA may avoid paying overtime on the ground that its instructors are within the "profession of teaching," a category of employees

---

[1] For convenience appellants will be referred to collectively as "DLSE" and respondent will be referred to as "CSCA" unless otherwise indicated.

exempted from overtime pay by Industrial Welfare Commission wage order 4-2001. We conclude CSCA's teachers are exempt from the overtime requirement and therefore affirm the judgment.

## BACKGROUND

DLSE is a division of the state Department of Industrial Relations authorized to enforce provisions of the Labor Code and orders, including wage orders, issued by the Industrial Welfare Commission (IWC). (Lab. Code, §§ 56, 95, & 1193.5, subd. (b).) Specific to the issue presented in this appeal is the application of IWC's wage order 4-2001, exempting professional employees from entitlement to overtime wages. In relevant part subsection 1(A)(3) of the wage order provides:

"Professional Exemption. A person employed in a professional capacity means any employee who meets *all* of the following requirements:

"(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: . . . teaching . . . ;

"[¶] . . . [¶]

"(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in subparagraph[] (a) . . . .

"(d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. . . ."

Section 2 of the wage order defines "teaching" as: "(R) . . . the profession of teaching under a certificate from the Commission for Teacher Preparation and Licensing or teaching in an accredited college or university."

CSCA is a private entity operating a culinary school and employs 66 instructors. It contends that its instructors are exempt from entitlement to overtime wages based on its interpretation of the terms of IWC wage order 4-2001. In essence, CSCA asserts its instructors are "teachers in an accredited college" and fall within the order's provision for the professional exemption accorded to "teachers."

DLSE disagreed and sent CSCA a letter informing it that CSCA's instructors are not classified as exempt from the overtime provision of IWC wage orders. DLSE's determination was based on the opinion of its counsel, Thomas Kerrigan. He opined that CSCA is a "cooking school . . . [that] claims

its teachers are exempt from existing overtime requirements as teachers at an 'accredited college or university' within the meaning of IWC 4-2001, sections 1(A)(3) and 2(R). [¶] While I agree that the statement in our Policies and Procedures Manual limiting the exemption to institutions that grant bachelor's or higher degrees does not have the force of law, and is an 'underground regulation,' this definition would be upheld by the courts as consistent with generally accepted usage of the words 'college or university.' [¶] The teachers at this institution are accordingly not exempt from the overtime laws."

In response to DLSE's contention, CSCA filed a complaint for a declaration and judgment that pursuant to IWC wage order 4-2001 sections 1(A)(3)(a) and 2(R), CSCA and its instructors are exempt from overtime wage laws. DLSE answered and CSCA filed a motion for summary judgment.

In support of its motion for summary judgment, CSCA filed the declaration of Christopher C. Becker as the evidentiary foundation for CSCA's separate statement of undisputed material facts. Becker is the founder and president of CSCA, and in summary, describes the school's organization and operation as follows:

CSCA was founded in 1994, offering instruction and postsecondary degrees in the field of culinary arts and management of commercial restaurants. Its campus is located in Pasadena, California, and operates in an 80,000 square foot facility. It has 35 classrooms and an extensive library. In addition to its senior administrative staff, it employs 66 instructors. Twelve are "Academic Instructors," 47 are "Chef Instructors," and seven are "Department Chairs (Hot Foods Production, Restaurant Practical, Garde Manger, Academics, Introduction to Culinary Arts I, Introduction to Culinary Arts II, and Baking & Pastries)."

"The workweek of each CSCA instructor varies from week to week and course to course. Most are in the classroom approximately five days a week conducting six and a half hour long classes (excluding breaks). When not teaching, CSCA's instructors hold office hours at which time they counsel students with respect to their progress . . . . [¶] . . . A class typically involves approximately an hour of lecture and demonstration by the CSCA instructor, several hours of meal preparation with guidance from the CSCA instructor . . . , [and] an hour of evaluation by the CSCA instructor of the students' performance." "There are no set hours or express direction on how a[n] instructor is to conduct his or her work."

"CSCA's curriculum consists of a rigorous 60 weeks of coursework. Included are 1800 contact hours, which are classroom hours and labs, and 96 quarter credits, which is the minimum number of credits to graduate."

Students are given a required reading list, regular homework assignments, quizzes, midterms, and final examinations. The students are graded and must maintain a grade point average of 2.0 on a 4.0 grade scale to graduate and receive a "Le Cordon Bleu Culinary Arts Diploma."

Since 1997, CSCA has been accredited by the Accrediting Council for Independent Colleges and Schools (ACICS). ACICS is an independent, national, institutional accrediting agency. It has been recognized by the United States Secretary of Education and the Council for Higher Education Accreditation since 1956. ACICS accredits approximately 600 institutions in the United States and abroad with 350,000 students in 2002. Over 60 percent of ACICS-accredited institutions are degree-granting colleges. The Secretary of Education recognized ACICS as a national accrediting body for postsecondary institutions offering primarily business and business-related programs of study at nondegree and associate's, bachelor's, and master's degree levels (http://www.acics.org (as of Sept. 18, 2003)).[2]

CSCA has been approved by the California Bureau for Private Postsecondary & Vocational Education (CBPPVE) pursuant to Education Code section 94915, subdivisions (b) and (f), and Title 5 of the California Code of Regulations, section 73410. Each CSCA instructor holds a valid and applicable certificate of authorization for service pursuant to Education Code section 94915, subdivision (b)(3). On February 15, 2002, the CBPPVE approved CSCA to operate as a degree-granting institution, and on April 9, 2002, ACICS approved CSCA to grant an Associate of Occupational Studies Degree.

In opposition to CSCA's motion for summary judgment, DLSE requested the trial court to take judicial notice both of passages in Encyclopaedia Britannica describing colleges and universities (see fn. 4, *post*) and the fact that CSCA is not listed "in any of the standard lists of colleges and universities, such as *Martindale-Hubbell, The Arco Field Guide to Colleges, and The Directory of American Colleges and Universities.*"

DLSE's dispute of CSCA's separate statement of undisputed material facts is based on bald assertions that underlie its legal argument, made without reference to any supporting evidence. In summary, it argues CSCA does not provide a "four year baccalaureate program of education"; ACICS "is not an accrediting body for four year academic colleges & universities, but only for 'career schools and colleges' "; CSCA is approved by the State of California

---

[2] " 'Accredited' means that an institution has been recognized or approved as meeting the standards established by an accrediting agency recognized by the United States Department of Education . . . ." (Ed. Code, § 94712.)

through the CBPPVE "solely as a vocational institution for purposes unrelated to applicable IWC orders"; and finally, "[CSCA's] faculty is not sufficiently educated or academically trained."

The present dispute puts in issue whether CSCA is a "college" to qualify its instructors as "teachers" within the professional exemption provided by IWC wage order 4-2001.[3] DLSE contends that CSCA's instructors do not fall within the exemption because "[t]he division has historically defined college or university to mean a school of higher learning teaching academic subjects which grants at least the bachelor degree in arts and science or both."

The trial court issued an extensive order granting summary judgment. It found CSCA's statement of undisputed facts was admitted and established CSCA possessed all the indicia of a "college." The trial court applied the provisions of the Federal Labor Standards Act, and by a comparative analysis with California law, declared CSCA is a "college" and its instructors are exempt from being paid overtime in accord with IWC wage order 4-2001. It also rejected DLSE's contention that the term "college" is by definition a "qualified institution of higher learning offering a four year course of study leading to a bachelor's degree" and does not apply to vocational schools. The trial court found that there is no common meaning for the term "college."

DLSE appeals the judgment on the grounds that the trial court erred by applying federal law to make a comparative analysis with California law and by declining to take judicial notice of "commonly accepted definition[s] of college and university."

## DISCUSSION

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine

---

[3] Labor Code section 510, subdivision (a) provides in pertinent part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

Labor Code section 515 provides in part: "(a) The Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Sections 510 and 511 for executive, administrative, and *professional* employees, provided the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and . . . [¶] (b)(2) Except as otherwise provided in this section . . . , nothing in this section requires the commission to alter any exemption from provisions regulating hours of work that was contained in any valid wage order in effect in 1997. Except as otherwise provided in this division, the commission may review, retain, or eliminate any exemption from provisions regulating hours of work that was contained in any valid wage order in effect in 1997." (Italics added.)

whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' [citation]—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law.' " (*Ibid.*, citing Code Civ. Proc., § 437c.) " 'Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no material issue of fact to be tried. [Citations.] The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. [Citation.]' " (*Suzuki v. City of Los Angeles* (1996) 44 Cal.App.4th 263, 269 [51 Cal.Rptr.2d 880].) "As a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court. [Citation.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1989) ¶ 8:168.5a, pp. 8-98.3 to 8-98.4 (rev. # 1, 2001).)

CSCA's statement of undisputed material facts is uncontroverted. DLSE's response consisted only of legal conclusions, unsupported assertions, and the opinion of its counsel. It purported to dispute some of CSCA's 24 statements of material facts without reference to any evidence. This approach is totally deficient. "Without a separate statement of undisputed facts with references to supporting evidence in the form of affidavits or declarations, it is impossible for the [opposing party] to demonstrate the existence of disputed facts." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 [113 Cal.Rptr.2d 90].)

CSCA's statement of undisputed material facts include statements "(6)" that its "instructors are 'academically and experientially appropriate,' " "(7)" it "devotes its full attention to 'educational activities, student financial aid, financial operations, plant and equipment, and student services,' " and "(8)" it has " 'established and administered measures of satisfactory academic progress' including the maintenance of a 2.0 grade point average." DLSE disputes each statement with the contention: "Plaintiff's faculty is not sufficiently educated or academically trained." In support of such assertion it references the declaration of its counsel, Thomas S. Kerrigan. Kerrigan's declaration has no evidentiary content because it simply incorporates as an exhibit CSCA's responses to interrogatories. The declaration is deficient as an evidentiary predicate to a separate statement of material facts. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 336 [282 Cal.Rptr. 368].)

CSCA has therefore established it has all the indicia of a "college." It has an extensive facility with a large and relevant library. The faculty is composed of 66 instructors. Its formal curriculum requires completion of 60 weeks of instruction at an established level of performance, consistent with a commitment to provide a comprehensive education to students seeking a career in the restaurant and hotel industry.

CSCA has obtained accreditation by ACICS, an independent national institution accrediting organization recognized by the United States Secretary of Education. It has also been approved by the CBPPVE pursuant to Education Code section 94915 and title 5 of the California Code of Regulations section 73410.

■ In order for an entity to be designated a "college," it must apply to and be approved by the CBPPVE to fulfill the declared legislative intent. (Educ. Code, § 94050.) Section 94705 of the Education Code provides: "It is the intent of the Legislature to promote the effective integration of private postsecondary education into all aspects of California's educational system and to foster and improve the educational programs and services of these institutions while protecting the citizens of the state from fraudulent or substandard operations."

It is abundantly apparent that California encourages and validates institutions offering a variety of fields of study and, in compliance with the operative regulation, permits institutions to be designated and recognized as a "college." CSCA has complied with the statutory requirements to be designated a "college" and, based on its accreditation by ACICS, it is an "accredited college." The fact that it does not include the term "college" in its name is irrelevant since the issue here is not how it is identified, but what it is in substance. Because DLSE failed to dispute any of CSCA's statement of undisputed material facts, we resolve this appeal as a question of law.

Preliminarily, we address DLSE's contention that the trial court's historical comparative analysis of wage order 4-2001 and the Federal Labor Standard Act is, in this case, flawed. We conclude DLSE is correct, but, as we shall explain, this error is not dispositive.

The federal and California laws providing for professional exemption from overtime wages, especially as applied to "teachers," are significantly different. Accordingly, we do not agree that the issue is appropriately addressed by a comparative analysis of the federal and California law.

Title 29 of the United States Code section 213(a)(1) provides an overtime exemption for "any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the

capacity of academic administrative personnel or teacher in elementary or secondary schools)." "The regulations at 29 C.F.R. § 541.3 include in the definition of 'professional,' any employee whose 'primary duty' consists of 'Teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in the school system or educational establishment or institution by which he is employed . . . .' [¶] The [federal] regulations at 29 C.F.R. § 541.302(g)(2) provide that teaching personnel may include, *inter alia*, teachers of music, trades, automobile driving, and aircraft flight instructors." (*Wilks v. District of Columbia* (1989) 721 F.Supp. 1383, 1385.)

California's provision for overtime exemption is much narrower than the federal law. IWC wage order 4-2001, section 1(A)(3) includes a person employed in a professional capacity, licensed or certified by the State of California, engaged in "teaching in an accredited college or university," and who customarily and regularly exercises discretion and independent judgment in performing his or her duties.

The trial court held that the rationale and purpose behind exempting professional employees is "derived from the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*" It analyzed the issue by a comparison of federal authority with California law, noting that because there is a "dearth of California law which specifically addresses whether teachers at an institution like CSCA are exempt, it is appropriate to look to parallel federal law, here the FLSA." The trial court relied on *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562 [38 Cal.Rptr.2d 221], for the proposition that "[b]ecause the California wage and hour laws are modeled to some extent on federal laws, federal cases may provide persuasive guidance." But the trial court failed to consider the remainder of the paragraph in the appellate opinion: "However, California's professional employee exemption is narrower than that in the FLSA, and the administrative employee exemption is somewhat different. . . . Exemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms." (*Id.* at p. 562.)

While federal authority may be persuasive, it is not controlling and, here, it is not dispositive. The narrow scope of California's IWC wage order is strikingly different from 29 United States Code section 213 extending the FLSA to teachers of music, trades, automobile driving, and aircraft flight instructors. We, therefore, depart from the trial court's reliance on the FLSA to interpret the professional exemption provided within IWC wage order 4-2001.

The evidence produced by CSCA demonstrates beyond question that it possesses all the indicia of a "college." Moreover, it is approved by CBPPVE

and each of its instructors hold a valid and applicable certificate of authorization for service required by Education Code section 94915, subdivision (b)(3). It follows that CSCA's instructors are "teaching in an accredited college" as defined by IWC wage order 4-2001. But, DLSE argues that its policy limits the application of the "teaching exemption" to "institutions that grant bachelor's or higher degrees." On that ground alone, DLSE asserts that CSCA's claim to the "teaching exemption" must be denied. We disagree.

DLSE acknowledges its "Policies and Procedures Manual limiting the exemption to institutions that grant bachelor's or higher degrees does not have the force of law, and is an 'underground regulation.' " That concession is warranted based on the holding of *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 [59 Cal.Rptr.2d 186, 927 P.2d 296]. "DLSE's primary function is enforcement, not rulemaking. [Citation.] Nevertheless, recognizing that enforcement requires some interpretation and that these interpretations should be uniform and available to the public, the Legislature empowered the DLSE to promulgate necessary 'regulations and rules of practice and procedure.' [Citation.] The Labor Code does not, however, include special rulemaking procedures for the DLSE similar to those that govern IWC rulemaking, nor does it expressly exempt the DLSE from the [Administrative Procedure Act (Gov. Code, § 11340 et seq.)] . . . . [¶] . . . [¶] The APA provides that '[n]o state agency shall issue, utilize, enforce, or attempt to enforce . . . a regulation' without complying with the APA's notice and comment provisions. [Citation.] The exception that covers the IWC is expressly limited to the IWC and makes specific reference to the comprehensive rulemaking procedures that apply to the IWC. [Citation.] In the absence of textual support or some other persuasive indication of legislative intent, we will not assume the Legislature intended the DLSE to adopt regulations without any public participation or procedural safeguards." (*Id.* at pp. 569–571.) Thus, the Supreme Court found no basis to exempt DLSE from the requirements of the Administrative Procedure Act.

In response to our request to provide the document referred to in its opening brief supporting its position that "DLSE . . . has 'always contended that a college or university means a qualified institution of higher learning offering a four-year course of study leading to a bachelor's degree,' " DLSE submitted several publications authored by DLSE represen- tatives in connection with symposiums from 1991 through 1996. These publications include the statement: "The division has historically defined college or university to mean a school of higher learning teaching academic subjects which grants at least the bachelor degree in arts and science or both. Therefore, teachers in a trade school, for instance, would not be exempt."

To buttress its contention that its policy of limiting the "teaching exemption" for "teaching in an accredited college or university" to "a school of

higher learning teaching academic subjects which grants at least the bachelor degree in arts and science or both," DLSE argues that records of IWC confirm its interpretation. DLSE filed a request for judicial notice pursuant to Evidence Code section 451, subdivision (e) of 13 documents consisting of orders, minutes, and findings of IWC. None of these documents was filed in the trial court.

CSCA objected to any consideration of this issue as it pertains to a new theory not raised in the trial court. However, that general proposition is inapplicable where the issue before the appellate court is a question of law. (*Curcio v. Svanevik* (1984) 155 Cal.App.3d 955, 960 [202 Cal.Rptr. 499] ["The general rule is that a party to an action may not for the first time on appeal change the theory upon which the case was tried. [Citations.] The exception to this rule exists where a question of law only is presented on the facts appearing in the record."].) Because the issue before us is essentially a question of law, the facts not being in dispute as a result of DLSE failing to overcome CSCA's statement of undisputed material facts, we judicially notice the 13 IWC documents as requested. (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 [104 Cal.Rptr.2d 439].) We discuss them to the extent they are relevant to DLSE's contention that they show IWC intended the definition of "teacher in an accredited college or university" to be restricted to "institutions that grant bachelor's or higher degrees" in accordance with DLSE's "underground regulation."

The 1947 wage order adopted by IWC to exempt professional employees defined an employee as one who "is licensed or certified by the State of California and is engaged in the practice of one of the following professions: law, medicine, dentistry, architecture, engineering, teaching, or accounting." This order did not include a definition of "teaching." In 1957, the wage order included a definition of "teaching": " 'Teaching' means, for the purpose of this Order, the profession of teaching under a certificate from the California State Board of Education or teaching in an accredited college or university."

The "Industrial Welfare Commission Meeting of May 28, 29, and 30, 1957" includes the following excerpt: "The Commission agreed with the Order 2 Wage Board that only teachers having a recognized professional standing should be excluded from the Order. *Teachers in various institutions, such as trade schools, should be covered.*" (Italics added.) Without explanation, this oblique reference is not found in any IWC wage order. In fact, the IWC minutes for the 1963 meeting recite that a motion was made, seconded, and passed "That Section 2(i) . . . 'Teaching means, for the purpose of Section 1 of this Order, the profession of teaching under a certificate from the California State Board of Education or teaching in an accredited college or university.' " Another submission is entitled "Findings," apparently prepared

in connection with the IWC meeting in 1963. In it is the following passage: "Section 2. Definitions [¶] . . . [¶] The definition of 'teaching' was clarified to indicate it referred to the profession of teaching as set forth in Section 1 as a criteria for exemption from Sections 3 through 12, and the Commission's intent was all other teachers are covered by all sections of the Industrial Welfare Commission Orders."

Collectively, the submission of IWC documents does nothing to validate DLSE's application of its policy to limit the "teaching exemption" beyond the plain language of the current IWC wage order 4-2001 ("Effective January 1, 2001 as amended"). There is no evidence that the current form of wage order 4-2001 includes the limited definition adopted by DLSE. Therefore, DLSE's reliance on excerpts from a collection of outdated IWC records does not legitimize DLSE's policy as an enforceable regulation.

In its reply brief, DLSE argues Labor Code section 1198.4 "provide[s] the regulated public with a means by which they may inquire as to the interpretation given to the provisions of IWC Orders by the enforcement agency so that those regulated may be aware of the obligations the Orders impose. [*Sic.*]" Specifically section 1198.4 states in part: "Upon request, the Chief of the Division of Labor Standards Enforcement shall make available to the public any enforcement policy statements or interpretations of orders of the Industrial Welfare Commission." This obligation refers to "policy statements," which presumably must require compliance with the Administrative Procedure Act. (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th 557, 576 [927 P.2d 296] (*Tidewater*).) DLSE's interpretation is not simply a policy. It dramatically changes the qualifications to obtain a "teaching exemption."

Considering DLSE's reliance on its submission of earlier records of IWC, it is telling that no amendment has been made to the wage order excluding vocational schools or in any way adopting DLSE's "underground regulation." DLSE's self-determined definition is not supported by the documents of the early records of IWC and its policy is not entitled to any deference. This interpretation is entitled to no deference because it is a void regulation under *Tidewater, supra,* 14 Cal.4th 557, 576, even if it is of long–standing duration. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581–582 [94 Cal.Rptr.2d 3, 995 P.2d 139].) It is our role to interpret the wage order to decide its enforcement in this case. As well intentioned as the representatives of DLSE may be, it is not entitled to invoke any internal policy definition to interpret IWC wage orders simply because it divines that was the intent of IWC many decades past. If IWC determines that any limitation should be imposed on the exemption for "teachers in accredited colleges," it may do so according to the formalities that apply. At present the wage order may not be read to apply only to institutions awarding baccalaureate degrees or higher.

Finally, DLSE contends the "meaning of the words 'college,' 'university' and 'vocational school' . . . as used in the context of the exemption from protections afforded by IWC Orders," requires that CSCA's instructors be entitled to overtime wages. It relies on passages excerpted from the Encyclopaedia Britannica.[4] The definitions recited are unenlightening. To the extent that DLSE requires an institution to award a baccalaureate degree, it excludes all community and junior colleges where only associate degrees are conferred. (Ed. Code, § 78204.) An online search of the Encyclopaedia Britannica revealed that the definition of college is: "an institution that offers post-secondary education. The term is used without uniformity of meaning. [¶] . . . [¶] In the United States college may refer to a four-year institution of higher education offering only the bachelor's degree, or it may refer to a junior or community college with a two-year program that leads to the associate degree. . . . The term 'college' also refers to separate degree-granting professional institutions such as state teachers' colleges and agricultural colleges. 'College' is also used in the names of institutions that teach office skills, automotive repair, hairdressing, and other trades." (http://search.eb.com/eb/article?eu=25168 (as of Sept. 13, 2003).) On the other hand, Webster's Encyclopedic Unabridged Dictionary of the English Language (1989 ed.) at page 290 defines college: "1. an institution of higher learning, esp. one providing a general or liberal arts education rather than technical or professional training."

It is obvious that the term "college" must be applied in context. Here, the context is to determine if it applies to instructors of culinary arts and if their professional status exempts them from overtime wages. At its core, the difference has more to do with the independence of the "teacher's" performance than with the subject matter of the instruction. Furthermore, DLSE's crabbed definition of "college" is contrary to California's declared policy "to promote the effective integration of private postsecondary education into all aspects of California's educational system and to foster and improve the educational programs and services of these institutions." (Educ. Code, § 94705.) We agree with the trial court's finding that there is no common meaning for the term "college." Resorting to dictionaries does not further DLSE's position.

Based on our de novo review, we affirm the judgment on the ground that the exemption afforded to teachers "in an accredited college or university" is

---

[4] DSLE quotes the following: " 'Most of the formal professional education in the United States is acquired in the universities, where it is organized in patterns. Much of it consists of four-year programs which students enter upon completion of secondary education and which end with the attainment of the batchelor's [sic] degree. [¶] All universities, except those that are universities in name only, provide programs of advanced study leading to graduate degrees.' Encyclopaedia Brittanica [sic], Vol. 22, p. 876." This is an incomplete citation as neither the year nor the edition of the Encyclopaedia Britannica is provided.

not restricted to those who teach in institutions that grant a baccalaureate degree or higher. The boundaries of California's education system have expanded to include a much broader category of institutions than those envisioned by DLSE.

## DISPOSITION

The judgment is affirmed.

Epstein, J., and Curry, J., concurred.