Filed 1/22/14 (unmodified version attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CATHY LEXIN, | D062970 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00084354-CU-MC-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 23, 2013, be modified as follows:

1. On page 6, the last sentence of the second full paragraph is modified to read as follows:

> The city attorney failed to muster a majority vote, although the council reportedly rescinded the resolution prospectively.

2. On page 8, first sentence of the first full paragraph, the word "refusal" is changed to "failure" so the sentence reads:

> At the hearing, the board members argued the city council's adoption of resolution R-297335 coupled with its subsequent failure to retroactively rescind the resolution implicitly satisfied the criteria of section 995.8, subdivision (b).

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____
                                    MCCONNELL, P. J.

Copies to:  All parties

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CATHY LEXIN et al., | D062970 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2011-00084354-CU-MC-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

Jan I. Goldsmith, City Attorney, and David J. Karlin, Deputy City Attorney for Defendant and Appellant.

Gibson Dunn & Crutcher and Nicola T. Hanna for Plaintiff and Respondent Cathy Lexin.

Coughlan Semmer Fitch & Pott and Raymond J. Coughlan, Jr. for Plaintiff and Respondent Ronald L. Saathoff.

Sheppard, Mullin, Richter & Hampton, Robert D. Rose, Karin D. Vogel; Polek Law Group and Frank J. Polek for Plaintiff and Respondent John A. Torres.

David A. Hahn for Plaintiff and Respondent Mary Vattimo.

Law Offices of Frank T. Vecchione and Frank T. Vecchione for Plaintiff and Respondent Terri A. Webster.

Damiani Law Group and Lisa J. Damiani for Plaintiff and Respondent Sharon K. Wilkinson.

Goldfarb & Lipman and James T. Diamond, Jr. for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

This is the latest appeal arising from the City of San Diego's (the City) infamous underfunding of its employment retirement system. In 2002 the Board of Directors (board) of the San Diego City Employees' Retirement System (SDCERS) approved the City's proposal to modify the funding plan to delete the potential of a balloon payment if the underfunded ratio fell to a certain level, in exchange for the City's resolution to indemnify the board members from liability for "any claim or lawsuit" arising from the approval.[1] In *Torres, supra,* 154 Cal.App.4th at pp. 224-226, this court held the

---

[1]     (See *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1069-1070 (*Lexin*); *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 218-219 (*Torres*).) The plaintiffs in this action are former board members Cathy Lexin, Ronald L. Saathoff, John A. Torres, Mary E. Vattimo, Sharon K. Wilkinson, and Teresa A. Webster, the same board members involved in *Lexin* and *Torres*.

resolution required the City to pay attorney fees the board members incurred in enforcing their right to costs of defense in two civil actions brought against them by the then city attorney arising from their approval of the modification.

In this appeal, the issue is whether the City's resolution also requires it to pay the board members' criminal defense costs in *Lexin*, *supra*, 47 Cal.4th 1050, an action the San Diego County District Attorney brought against them for felony violation of the states' conflict of interest statute, Government Code section 1090.[2] The City appeals a summary judgment for the board members in their declaratory relief action, contending (1) the resolution does not apply to criminal proceedings and (2) section 995.8 precludes an award of defense costs because, after commencement of the criminal action, the city council did not hold a formal hearing to determine the provision of a defense would be in the City's best interests and the board members "acted . . . in good faith, without actual malice and in the apparent interests of the public entity" when it approved the modification. (§ 995.8, subd. (b).) The City asserts that despite its indemnity agreement, it had the right to arbitrarily deny a defense.[3]

We affirm the judgment. The plain language of the City's resolution requires it to pay criminal defense costs and there is no statutory impediment.

---

[2]    Further statutory references are also to the Government Code unless otherwise specified.

[3]    The League of California Cities filed an amicus curiae brief in support of the City's position.

3

FACTUAL AND PROCEDURAL BACKGROUND[4]

In 1996 the City modified its method of funding the pension fund under an agreement known as the "City Manager's Proposal 1" (MP1). Historically, an actuary had determined the annual rate, but the City began contributing a set rate, which caused the retirement system to be underfunded. MP1 included a trigger that required a balloon payment if the funded ratio dropped below 82.3 percent.

In 2001 SDCERS earnings began falling precipitously as the economy faltered. The City was concerned that the 82.3 percent trigger would be met, which would require it to contribute an additional $25 million to the pension fund in one year. During the same time, the City entered negotiations with municipal unions over new labor agreements and the unions sought enhanced retirement benefits. The balloon payment "would have seriously hampered the City's ability to deliver services and would have led to layoffs," and consequently, "the City elected to condition any increase in pension benefits on its obtaining relief from the SDCERS [b]oard from the effect of hitting the trigger." (*Lexin*, *supra*, 47 Cal.4th at p. 1066.)

In 2002 the city council, in conjunction with the city manager, developed, wrote, and formally proposed to the board a modification to the MP1, known as "Manager's Proposal II" (MP2). The City originally proposed lowering the trigger to 75 percent, but ultimately MP2 retained the 82.3 percent trigger and provided that if it was met, the City

---

4    For convenience, we take some of the factual background from *Lexin, supra,* 47 Cal.4th 1050, and *Torres, supra,* 154 Cal.App.4th 214.

would have until 2009 to reach the actuarial rate. The city attorney approved MP2 as to form and legality.

During the board's consideration of MP2, it had significant concerns about potential liability arising from its approval. The board's fiduciary counsel opined there was a "material risk" that if it approved the proposal, at least as it was originally designed to lower the trigger to 75 percent, a court would find it had not properly exercised its fiduciary responsibility and board members could be held personally liable. Further, the board was apprised that a local attorney had already threatened a lawsuit. The board members requested an indemnity agreement before approving MP2.

On November 18, 2002, the city council unanimously adopted resolution R-297335 to indemnify the board members. The board approved MP2, and an agreement, also dated November 18, memorializes the terms. Fiduciary counsel opined that the measure in its final form was a proper exercise of the board's fiduciary responsibility.

Resolution R-297335's preamble explains that board members "may, from time to time be subjected to claims and suits for actions taken in [that] capacity," and "there is a need to protect and encourage individuals who volunteer their time and their talent to serve in the public interest." Resolution R-297335 provides that "the City shall defend, indemnify and hold harmless all past, present and future members of the Retirement Board against all expenses, judgments, settlements, liability and other amounts actually and reasonably incurred by them in connection with *any claim or lawsuit* arising from any act or omission in the scope of the performance of their duties as Board Members." (Italics added.) Further, it provides "that in the event the City Attorney . . . is unable or

5

unwilling to provide such defense, the City shall pay for any and all costs and expenses of a Board Member related to such defense, which obligation it may satisfy in its sole discretion by engaging outside counsel at its sole expense."

In May 2005 the district attorney charged the board members with felony violations of section 1090[5] on the ground they were financially interested in MP2 because pension enhancements were contingent on its approval.[6] The board members tendered their defense to the City. After receiving an outside legal opinion in favor of the board members, the city council voted four to two to provide a defense. A vote of five was required to carry the matter, however, and thus they were required to retain their own counsel.

During March and April 2006 city council meetings, Aguirre urged the city council to rescind resolution R-297335 retroactively to avoid liability for criminal defense costs. A majority of the city council refused, although they reportedly rescinded the resolution prospectively.

---

[5] Section 1090 codifies the common law prohibition against "self-dealing" with respect to contracts. (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1230.)

[6] Further, in July 2005 Michael Aguirre, then elected as City Attorney, brought two civil actions against the board members arising from their approval of MP2. (*People v. Grissom* (Super. Ct. San Diego County, 2005, No. GIC850246); *SDCERS v. Aguirre* (Super. Ct. San Diego County, 2005, No. GIC841845).) As we noted in *Torres,* "[t]hat created an unusual situation . . . as . . . the provision of a defense would require the City to pay both prosecution and defense costs." (*Torres*, *supra*, 154 Cal.App.4th at p. 219.) Aguirre eventually dismissed the board members from both civil actions, and they obtained defense costs under resolution R-297335, along with attorney fees incurred in obtaining defense costs. (*Id.* at p. 220-221.)

The board members moved to dismiss the criminal information on the ground their approval of MP2 did not violate section 1090. The trial court denied the motion and this court summarily denied writ relief. The Supreme Court granted review and transferred the matter to us for the issuance of an order to show cause. On remand, we issued an opinion denying review. The Supreme Court granted review "to resolve the significant questions of first impression." (*Lexin, supra,* 47 Cal.4th at p. 1071.)

*Lexin* reversed, except as to Saathoff, concluding the board members should have been dismissed because they had no conflict of interest within the meaning of section 1090. Rather, the public services exception to section 1090, section 1091.5, subdivision (a)(3), applied since their financial interest in the retirement system was shared with the system's constituency as a whole and "financial interests shared with one's constituency do not present the dangers the state's conflict of interest laws were designed to eradicate." (*Lexin*, *supra*, 47 Cal.4th at p. 1063.)

*Lexin* concluded that Saathoff, who at the relevant time was the incumbent president of a municipal union, "could on the preliminary hearing record reasonably be suspected of having obtained a unique, personalized pension benefit as a result of voting to approve the retirement board's contract with the City." (*Lexin*, *supra*, 47 Cal.4th at p. 1063.) After the adverse ruling in *Lexin*, however, the district attorney dismissed all charges.

The board members then commenced this action against the City for a judicial declaration they are entitled to costs of defense in the criminal action under resolution R-297335. Both sides moved for summary judgment, and in its first tentative ruling the

7

court ruled in favor of the City. The court determined that although a public entity may contract to provide criminal indemnity rights to its employees, an award was precluded since "neither [resolution] R-927335 nor any later enactment addresses the two findings required by section 995.8." Subdivision (b) of section 995.8, provides that a public entity has discretion to provide public employees with a criminal defense if they were acting in the scope of their employment, and the entity determines a defense would be in its best interests and the employees acted in good faith, without malice and in the entity's best interests.

At the hearing, the board members argued the city council's adoption of resolution R-297335 coupled with its subsequent refusal to retroactively rescind the resolution implicitly satisfied the criteria of section 995.8, subdivision (b). The court granted the parties leave to submit supplemental briefing on the issue.

After considering the supplemental briefing, the court issued a new tentative ruling in the board members' favor. The court determined resolution R-297335 applies to criminal actions; the resolution did not excuse the City from complying with the safeguards of section 995.8, subdivision (b), but it precluded the City from arbitrarily denying a defense; and to avoid the provision of a defense "it becomes the City's burden to demonstrate that one of the factors specified in section 995.8 has not been met." After another hearing, the court entered an order consistent with the new tentative ruling and entered judgment awarding the board members attorney fees, costs, late fees, and interest, as follows: Lexin, $1,708,621.69; Saathoff, $774,837.12; Torres, $434,621.86; Vattimo, $945,696.44; Webster, $1,060,297.51; and Wilkinson, $495,441.91.

8

DISCUSSION

I

*Standard of Review*

A motion for summary judgment shall be granted where "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) When a moving party establishes its prima facie burden, the burden shifts to the opposing party to show a triable issue of one or more material facts exists. (*Id.,* subd. (p)(2).)

" 'We review the grant of summary judgment de novo. [Citation.] We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." ' " (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1113.) We affirm the summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court. (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.) Further, interpretation of the City's resolution, presented on undisputed facts, and applicable provisions of the Government Claims Act is a legal matter subject to independent review. (*Shirey v. Los Angeles County Civil Service Commission* (2013) 216 Cal.App.4th 1, 7.)

II

*Defense of Public Employees*

A

The Government Claims Act (§ 810 et seq.) sets forth a public entity's defense obligations (§ 995-996.6). An entity is ordinarily required to defend a civil action against an employee arising from the scope of employment. (§ 995; *Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 175 (*Police Protective League*).)[7]

By contrast, a public entity may, ordinarily, *arbitrarily* refuse an employee a defense in a criminal action. (*Police Protective League*, *supra*, 27 Cal.App.4th at p. 176.) Section 995.8 provides: "A public entity is not required to provide for the defense of a criminal action or proceeding . . . brought against an employee or former employee, but a public entity may provide for the defense . . . if: [¶] (a) The criminal action or proceeding is brought on account of an act or omission in the scope or his employment as an employee of the public entity; and [¶] (b) The public entity determines that such defense would be in the best interests of the public entity and that the employee or former employee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the public entity."

---

7    Section 995.2 sets forth exceptions to the general rule, for instance, when an entity determines the employee's conduct was fraudulent or corrupt, or the provision of a defense would create a conflict of interest. (§ 995.2, subd. (a)(2) & (3).)

B

It is undisputed that when the board members voted in favor of MP2 they were acting in the scope of their employment with the City, and thus subdivision (a) of section 995.8 was satisfied. The dispute is over compliance with subdivision (b) of section 995.8. The City contends the exclusive focus of resolution R-297335 was civil proceedings, and thus the adoption of the resolution does not indicate the city council undertook the type of deliberation required to provide a criminal defense.

"The construction of a municipal resolution is governed by the rules that govern construction of statutes. [Citation.] The 'primal principal of statutory construction requires the ascertainment of the *intent of the legislative body* [citations] . . . . When . . . there is no direct evidence of the legislative intent, the court turns first to the words of the enactment for the answer and may also rely upon extrinsic aids [citations], including *recitals and findings in the enactment*.' " (*Torres*, *supra*, 154 Cal.App.4th at pp. 225-226.)

Resolution R-297335 broadly requires that the City "defend, indemnify and hold harmless all past, present and future members of the Retirement Board against *all expenses*, judgments, settlements, liability and other amounts actually and reasonably incurred by them in connection with *any claim or lawsuit* arising from any act or omission in the scope of the performance of their duties as Board Members." (Italics added.) As we concluded in *Torres*, *supra*, 154 Cal.App.4th at p. 226, resolution R-297335 shows the City "did not want any of the . . . members of the SDCERS Board of Administration to incur attorney fees associated with *any litigation* pertaining to the

11

discharge of their duties."  Again, the resolution's preamble acknowledges that board members "may, from time to time be subjected to *claims and suits* for actions taken in [that] capacity," and "there is a need to protect and encourage individuals who volunteer their time and their talent to serve in the public interest."  (Italics added.)

The exclusion of a criminal defense arising from the approval of MP2 would obviously not protect the board members or encourage them to serve.  As the trial court noted, "Plainly, the purpose of the resolution would not be served if plaintiffs were forced to spend substantial sums defending against the 2005 criminal charges."  It is no secret that a violation of section 1090 may result in criminal liability as well as civil liability. (§ 1097; *D'Amato v. Superior Court* (2008) 167 Cal.App.4th 861, 869 (*D'Amato*).) "[T]he official is subject to criminal liability under section 1097 if the official knows that he or she might profit from the contract.  [Citation.]  It is not a defense that the official acted in good faith, sincerely believed the contract was in the public's best interest, or acted under the advice of counsel."  (*D'Amato*, *supra*, at p. 869.)  As the board members point out, "there was virtually no distinction between the civil and criminal actions filed against [them], except as to who filed the lawsuit and the risk [they] faced in each."

The lack of discussion on the record by board members about the potential for a criminal action does not change our analysis as the plain language of the resolution controls.  As the trial court found, the minutes of board meetings "do not demonstrate [it] was unconcerned about criminal liability" and "the City has not established that the comments made at these meetings were communicated to and considered by the City Council or, even if they had been, what effect they might have had on the Council."

12

Further, we reject the argument that the resolution's reference to "claim or lawsuit" indicates the intent to limit its reach to civil actions. (See, e.g., *Lexin*, *supra*, 47 Cal.4th at p. 1075, fn. 13, [criminal action referred to as a "claim"]; *Vt. Agency of Natural Res. v. United States ex rel. Stevens* (2000) 529 U.S. 765, 771 [criminal action referred to as a "lawsuit"].)

We conclude resolution R-297335 cannot reasonably be read to exclude criminal actions.[8] If that is what the City intended, it should have said so, and in that instance perhaps the board members would not have taken a risk by acquiescing to the City's proposed MP2.[9]

### C

Additionally, the City makes much of comments in the court's order pertaining to the burden of proof under section 995.8. The order states: "Having enacted [resolution] R-297335, a broad indemnity resolution that generally authorizes reimbursement of defense costs in criminal actions, it becomes the City's *burden to demonstrate that one of*

---

[8] Aguirre was of the same opinion. In a court filing, he wrote: "What is shocking about the indemnity provision in question [resolution R-297335] is that, unlike . . . § 995 *et seq.* [it] is all encompassing. There is no fraud exception, no embezzlement exception, no conflict of interest exception. Instead, there is a flat requirement of full defense and indemnity regardless of whether the employee is innocent or is convicted and sentenced to prison."

[9] The City knows how to limit its indemnification exposure when it so desires. For instance, the record shows that in 1996 the City adopted an ordinance to indemnify volunteers performing various services, which expressly gave it discretion to exclude criminal matters. In 1994 the City adopted an ordinance to indemnify loan committee members, which expressly gave it the discretion to exclude conflict of interest actions under section 1090.

13

*the factors specified in section 995.8 has not been met*. The City disagrees, suggesting plaintiffs are not entitled to be paid because the City has never made the findings necessary to comply with section 995.8. In effect, it argues it can avoid any obligation to pay plaintiffs' criminal defense costs simply by refusing to decide whether the procedural requirements of section 995.8 have been satisfied. [¶] The City's argument seems to rely on the notion that a public entity can arbitrarily refuse to pay for an employee's defense in a criminal case. [Citation.] By enacting [resolution] R-297335, however, [the] City relinquished its right to act arbitrarily. It was agreeing to pay for [b]oard members' civil and criminal defense costs, provided it could legally do so."

The City submits that the italicized language rewrote section 995.8 and imposed a burden the Legislature did not intend. The City persists in arguing that despite agreeing to indemnify the board members against all claims arising from the approval of MP2, it could *arbitrarily* deny a defense, and thus it could not have a duty to make findings to support a denial.

In light of resolution R-297335, the court's assessment that the City could not arbitrarily deny a defense under section 995.8 seems logical and reasonable. "In construing statutes, we determine and effectuate legislative intent. [Citations.] To ascertain intent, we look first to the words of the statutes. [Citations.] 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' " (*In re Martinez* (2012) 210 Cal.App.4th 800, 809-810.) A statute "must be read in the context of the overall statutory scheme of which it is a part so

14

as to not lead to absurd results." (*Shirey v. Los Angeles County Civil Service Commission* (2013) 216 Cal.App.4th 1, 20.)

We need not resolve the issue, however, because we may affirm the judgment on the alternative ground the board members satisfied their burden of showing the city council *did* sufficiently comply with the procedural safeguards of section 995.8, subdivision (b). " 'As a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court.' " (*California School of Culinary Arts v. Lujan*, *supra*, 112 Cal.App.4th at p. 22.) " 'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.' " (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) "The sole question properly before us on review of the summary judgment is whether the judge reached the right *result*." (*Ibid.*)

At the first hearing, the board members argued the city council implicitly satisfied the criteria of section 995.8, subdivision (b), by adopting resolution R-297335, and through its conduct while the criminal action was pending. The court granted the parties leave to submit supplemental briefing on that and other issues.

The board members' supplemental brief states: "The [original] [t]entative [r]uling . . . relies . . . on the factual premise that the City Council considered Plaintiffs' indemnification only prospectively and abstractly, that the City had no opportunity to assess the nature of the criminal charges filed against Plaintiffs and their defense thereto, and that [resolution] R-297335 is the only ordinance or resolution reflecting the City's

15

consideration and intent with respect to these circumstances. As will be shown . . . , however, in 2006 the City specifically considered [resolution] R-297335 as providing for reimbursement of Plaintiffs' attorneys' fees in the [criminal action] and ratified this coverage through an additional resolution, R-301414. These actions of the City Council suffice to meet any requirements of section 995.8, particularly in light of the council's own creation of MP2 and its full knowledge and approval (in fact, direction) of the actions of the [b]oard members that led to the [criminal action] and [resolution R-297335]."

The board members submitted evidence that in a March 2006 city council meeting, Aguirre urged it to rescind resolution R-297335 retroactively. He argued the board members should be responsible for their own criminal wrongdoing or the board would be robbed of its independence. At an April 2006 city council meeting, Aguirre complained the resolution gave the board a "blank check," "irrespective of criminal or civil, with no limitation on how much money they could charge." He warned the city council that unless it rescinded resolution R-297335 retroactively, it would be "a ratification of the original decision to say, go ahead and take the risk of violating the law, we[']ll indemnify you if you[']re prosecuted."

A majority of the city council declined to rescind resolution R-297335 retroactively. One council member remarked, "The way I was brought up, if you make a promise or a contract or an agreement, then you stand by it. And I don[']t believe in changing the rules in the middle of the game. . . . It[']s really about these individuals who are placed on the board with an understanding that this resolution was in effect." In

16

May 2006 the city council adopted resolution R-301414, which repealed resolution R-297335 prospectively, for conduct of board members occurring after April 18, 2006, and provided the provision of a defense and indemnification from that date would be made under provisions of the Government Claims Act.[10]

Further, in July 2007, while the criminal action was still pending, Aguirre sent the mayor and the city council a memorandum again urging the retroactive rescission of resolution R-297335. Aguirre advised the resolution "granted [SDCERS] [b]oard [m]embers complete and total indemnity, including indemnity for criminal acts." It is undisputed that no such action was taken.

In its responsive supplemental brief, the City responded to the board members' argument. The City cursorily argued the city council's 2006 action did not satisfy section 995.8, subdivision (b).

At the second hearing, one of the board members, Torres, sought to clarify that the court determined the board members met their prima facie burden of proving the City's compliance with the safeguards of section 995.8. His counsel stated, "We know the plaintiff has the burden of proof. The City, as noted in the tentative, has no evidence to counter [plaintiffs' evidence]. And so, there really is nothing left to prove. There is no real need to get into what's the burden of proof [under section 995.8]. All the elements have already been met." His counsel added, "the court's tentative ruling basically

---

[10]    The copy of resolution R-301414 in the appellate record is unsigned.

17

says, . . . we can't forget the resolution here, but by looking at all the facts, all the evidence, . . . [plaintiffs' burden has] been satisfied."

The court responded, "I think he's correct." Although the court's order does not expressly refer to the city council's 2006 action, any shortcoming in that regard is harmless. "If independent review establishes the validity of the judgment, then the error is harmless." (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1146.) The record shows the board members met their burden of proving entitlement to judgment as a matter of law based on the City's implicit compliance with section 995.8, subdivision (b), and the City submitted no countervailing evidence. As the board members point out, the "City has no evidence that [they] acted dishonestly by, for instance, accepting a secret bribe, or taking kickbacks, or extorting funds. They simply voted to approve the . . . [p]roposal that the City Council wanted them to approve."

Moreover, contrary to the City's suggestion, the language of section 995.8 does not indicate any type of specific hearing or written findings are required. "Words may not be inserted in a statutory provision under the guise of interpretation." (*Kirkwood v. Bank of America Nat'l Trust & Sav. Asso.* (1954) 43 Cal.2d 333, 341.) Indeed, the City's own conduct belies its current position. The record shows that in October 2005 the city council adopted a resolution approving the payment of criminal defense costs in a federal case against an employee, without making any express findings under section 995.8.[11]

---

11    Given our holding, we are not required to address the City's assertion the court abused its discretion by not granting it leave to file supplemental briefing on the order's statement that the burden fell on the City to explain its reasons for denying a defense

18

III

*Application of City of Bell v. Superior Court*

While this appeal was pending, another appellate court decided *City of Bell v. Superior Court* (2013) 220 Cal.App.4th 236, petn. for review pending, petn. filed November 13, 2013, S214579 (*Bell*). The *Bell* court held a public entity may only provide a defense for a public employee in a criminal action if the requirements of section 995.8 are met. (*Id.* at pp. 255-256.) Additionally, it held that "no contractual provision requiring a criminal defense under any other circumstances can be enforced." (*Id.* at p. 259.) It further held "[a] public entity cannot agree in advance that any time its public employee is subsequently charged with a crime, the provision of a defense would be in the best interests of the public entity and the public employee will have acted in good faith and without malice" as such determinations must necessarily "be made on a case by case basis, after the criminal prosecution has begun." (*Id.* at p. 259, fn. 23.)

We requested and received supplemental briefing from the parties regarding the application of *Bell* to this case. After considering the supplemental briefing, we conclude *Bell* is factually and procedurally distinguishable because, in *Bell*, the employee requesting a defense was alleged to have committed theft-related crimes against his city employer; the employee based his defense request on a general indemnification clause in his employment contract; and the city employer denied the defense request because the employee's acts were not within the course and scope of his employment, he was alleged

under section 955.8, subdivision (b). We are also not required to address the board members' assertions that resolution R-297335 alone satisfies the requirements of section 995.8, and section 996.6 provides an independent basis for affirming the judgment.

19

to have acted with fraud, and providing him a defense would have created a conflict of interest between him and the city employer. (*Bell*, *supra*, 220 Cal.App.4th at pp. 241, 243-244, 261.) In contrast, the board members were not accused of theft-related crimes; the City was not a victim, but rather solicited the approval of MP2; the board members based their defense request on a resolution the City passed to specifically provide them with a defense to any claim or lawsuit arising from their approval of MP2; the City has never found the board members acted with fraud or outside the course and scope of their employment; and the board members' approval of MP2 has effectively been determined not to be criminal. We further conclude *Bell* is inapposite because of the ratifying effect of resolution R-301414 discussed in part II.C., *ante*.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

20