Filed 1/21/25  P. v. Aviles CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B328461 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA469608) |
| v. | |
| ROBERTO JAVIER AVILES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David R. Fields, Judge.  Affirmed.

California Appellate Project, Richard B. Lennon and Anna Rea, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Nicholas J.

Webster, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Roberto Javier Aviles (defendant) appeals his conviction for resisting an executive officer (Pen. Code, § 69)[1] on the grounds that the trial court erred (1) in denying his challenge to the prosecutor's exercise of a peremptory challenge under Code of Civil Procedure section 231.7, and (2) in not *sua sponte* instructing on the lesser-included offense of simple assault (§ 240). Concluding there was no error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I.     Facts**

In the early afternoon of March 19, 2018, Los Angeles Sheriff's Deputy Juan Cruz (Deputy Cruz) was overseeing a "module" of inmates within the Men's Central Jail in downtown Los Angeles.

Defendant and another inmate were standing outside of their cells at a time when they were not supposed to be. Because part of Deputy Cruz's job was to "rehouse" such inmates back into their cells, Deputy Cruz verbally asked defendant and the other inmate to return to their cells. The other inmate complied, but defendant did not.

Deputy Cruz asked defendant another five or six times to return to his cell, but defendant did not comply.

After radioing another custodial officer for assistance, Deputy Cruz calmly approached defendant and asked him again

---

1      All further statutory references are to the Penal Code unless otherwise indicated.

to return to his cell. Defendant again refused, and said he was getting a haircut; this was not a permissible reason.

Deputy Cruz asked defendant to comply again, and explained that he would have to place defendant in handcuffs and escort him to his cell if defendant did not comply. Again, defendant refused to comply.

As Deputy Cruz approached defendant and extended his hand toward defendant's wrist, defendant pulled back his arm and punched Deputy Cruz's chest.

As defendant began to land further blows on Deputy Cruz's head and face, Deputy Cruz ordered defendant to stop; when defendant did not stop, Deputy Cruz "protect[ed] [him]self" by landing four to five punches on defendant as defendant continued to punch him.

Other custodial deputies arrived and ended the fistfight by forcing defendant to the ground, where he was placed in handcuffs while still "actively resisting."

Neither defendant nor Deputy Cruz had any visible injuries, although Deputy Cruz's face was red.

The entire incident was captured on video.

## II. Procedural Background

The People charged defendant with resisting an executive officer (§ 69) by "unlawfully attempt[ing] by means of threats and violence to deter and prevent [Deputy Cruz] . . . from performing a duty imposed upon [him] by law" and by "knowingly resist[ing] by the use of force and violence [Deputy Cruz] in the performance of his[] duty."[2]

---

[2] The People also charged defendant with battery with injury upon a peace officer (§ 243, subd. (c)(2)), but dismissed that charge before trial.

3

The matter proceeded to trial in late April and early May 2022. The sole witnesses were Deputy Cruz and Deputy Rene Salas.

The trial court instructed the jury on the elements of the crime of resisting an executive officer through the "use[ of] force or violence," including the requirement that the officer be "performing his lawful duty" and that an officer "is not lawfully performing his . . . duties if he . . . is using unreasonable or excessive force in his . . . duties." Defendant did not request that the jury be instructed on the crime of simple assault as a lesser-included offense.

The jury found defendant guilty.

After denying defendants' motion for a new trial, the trial court imposed a mid-term sentence of two years in jail.

Defendant filed this timely appeal.

## DISCUSSION

### I. Improper Exercise of Peremptory Challenge

#### A. *Pertinent facts*

Prior to *voir dire*, the trial court explained its procedure for jury selection: The court and attorneys would question 24 jurors, the first 12 of whom would be seated in the jury box. After any excusals for cause, the parties would then be able to exercise peremptory challenges against any prospective juror in the jury box, which enabled the attorneys to "know who is coming up next."

While questioning the first 24 jurors, Juror No. 39 indicated that (1) she works two jobs (as a substance abuse counselor and as a case manager helping the homeless find housing) and also devotes time to being a freelancer writer; (2) she lives in Van Nuys with a partner who is studying to be a

4

medical social worker; (3) she has never served on a jury; (4) she has no children; (5) she has never been arrested; and (6) she has no relatives or close friends in law enforcement. Juror No. 39 stated she could be fair and impartial when hearing testimony from law enforcement officers. When asked if she had ever been the victim of a crime, she replied that she did not "feel comfortable" responding in open court.

At a sidebar, Juror No. 39 stated she had been the victim of a rape 23 years earlier. She explained that she did not try to have the perpetrator prosecuted because the perpetrator was one of her parents.[3] When asked, Juror No. 39 indicated that this incident would not affect her ability to be fair.

During further questioning of all prospective jurors in open court, defense counsel asked Juror No. 39 what she thought about the fact that the charged incident occurred while defendant was in custody; Juror No. 39 replied, "I have no opinion about it." The prosecutor asked Juror No. 39 if she could convict defendant based on the testimony of a single witness, as the law provides;

---

[3]    [Juror No. 39:]    "I was the victim of rape 23 years ago."

[The Court:]    "Okay. And was the person prosecuted for that?"

[Juror No. 39:]    "No."

[The Court:]    "Did you try to have that person prosecuted?"

[Juror No. 39:]    "No."

[The Court:]    "Okay."

[Juror No. 39:]    "It was – it was a parent so . . . ."

[The Court:]    "It was one of your parents?"

[Juror No. 39:]    "Yeah."

Juror No. 39 replied that she could. Those were the only further questions posed to her.

After dismissing six jurors inside the jury box for cause and repopulating the box with already-questioned jurors, the prosecutor accepted the panel. Defendant sequentially exercised peremptory challenges against two jurors seated in the jury box, and each time, the prosecutor accepted the newly constituted jury. When defendant exercised a third peremptory challenge, Juror No. 39 was seated in the jury box.

The prosecutor then exercised a peremptory challenge against Juror No. 39. Defendant objected, noting that Juror No. 39 and defendant are both Latinx. In response to the trial court's question, the prosecutor offered two reasons for exercising the strike—namely, that (1) the prosecutor preferred other "jurors coming up down the line," and (2) Juror No. 39 indicated "she was a victim of [what] sounds like a very violent crime but didn't get the police involved." In response to the court's follow-up question, "And the fact [Juror No. 39] is a victim of rape how does that sound to you?," the prosecutor responded, "It sounded like it was a traumatic experience. She never called the police and I just worried that perhaps that past experience for whatever reason may cloud her experience in a criminal court system."

The court overruled defendant's objection, finding no "implicit or purposeful discrimination" because the prosecutor had "valid reason[s] for wanting to kick off Juror No. 39 based on [(1) the juror's] prior traumatic experience as a rape victim, not getting the police involved" and (2) the prosecutor's "anticipat[ion of] other jurors coming down the road."

After defendant exercised one further peremptory challenge, both the prosecutor and defendant accepted the panel.

6

**B.** *Analysis*

    1.    *Pertinent law*

To supplement and supplant the intent-based, constitutional framework for evaluating the misuse of peremptory challenges embodied in *Batson v. Kentucky* (1986) 476 U.S. 79, 89 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258, 278 (*Wheeler*), our Legislature enacted Code of Civil Procedure section 231.7.

In criminal cases where jury selection begins on or after January 1, 2022, section 231.7 prohibits the "use [of] a peremptory challenge to remove a prospective juror on the basis of the prospective juror's [actual or perceived] . . . ethnicity," as well as six other protected characteristics.  (Code Civ. Proc., § 231.7, subds. (a), (i).)  Once an objection is made, the party exercising the strike must "state the reasons the peremptory challenge has been exercised."  (*Id.*, subd. (c).)  The court's evaluation of that reason or reasons turns on what those reasons are.  If the party's stated reasons for the strike match any of a list of 13 statutorily enumerated reasons,[4] the peremptory challenge "is presumed to be invalid unless the party . . . can show by clear and convincing evidence that [(1)] an objectively reasonable person would view the rationale as unrelated to a prospective juror's . . . ethnicity . . . , [and (2)] the reasons articulated bear on the prospective juror's ability to be fair and impartial in the

_____

4    The statute lists three other "presumptively invalid" reasons that deal with the juror's behavior or demeanor in court or when answering questions.  (*Id.*, subd. (g); *People v. SanMiguel* (2024) 105 Cal.App.5th 880, 888-889 (*SanMiguel*) [noting how subdivisions (e) and (g) "provide two separate lists of presumptively invalid reasons for exercising a peremptory challenge"].)

7

case." (*Id.*, subd. (e).) This standard is met only if "it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).) But if the party's stated reasons are not presumptively invalid (or if the presumption of invalidity is rebutted), then the trial court is charged with "evaluat[ing] the reasons given . . . in light of the totality of the circumstances," including a list of statutorily enumerated "circumstances," to "determine[ whether] there is a substantial likelihood that an objectively reasonable person"—that is, a person who is "aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California"—"would view [actual or perceived] . . . ethnicity . . . as a factor in the use of the peremptory challenge." (*Id.*, subds. (d)(1), (d)(2)(A), (d)(3); *People v. Gonzalez* (2024) 104 Cal.App.5th 1, 16 (*Gonzalez*).) We review de novo a trial court's determination that a strike was valid, and the sole remedy for any violation is reversal of the conviction. (*Id.*, subd. (j); *People v. Uriostegui* (2024) 101 Cal.App.5th 271, 279 (*Uriostegui*).)

2. *Application*

a. Presumptive invalidity

Although defendant did not make this argument to the trial court,[5] defendant argues on appeal that the prosecutor's stated reasons for striking Juror No. 39 were presumptively invalid

---

[5] The People urge that defendant's failure to make this specific objection to the trial court constitutes a forfeiture and invited error. For the reasons we explain below, even assuming defendant did not forfeit the argument, it fails on the merits.

8

because they indicated that Juror No. 39 was struck for "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system." (Code Civ. Proc., § 231.7, subd. (e)(1).) We reject this argument. Although the prosecutor worried that Juror No. 39's past victimization might "cloud her experience" in the courtroom, at no point did the prosecutor cite Juror No. 39's distrust of, or negative experience with, law enforcement or the criminal legal system as a basis for the strike. Nor was the prosecutor's stated reason a proxy for such distrust or negative experience. Although Juror No. 39 indicated that she did not report her rape to law enforcement, she also indicated, when asked, that her decision not to do so was based on the close family relationship she had with the perpetrator rather than to any ill feelings about law enforcement or the criminal legal system. (Cf. *Uriostegui*, *supra*, 101 Cal.App.5th at pp. 279-280 [prosecutor's stated reason of striking a juror due to "lack of life experience" is akin to the presumptively invalid reason of the juror's lack of employment or underemployment].)

Defendant resists this conclusion with what boils down to two arguments. First, he argues that "[i]t is precisely because Juror [No.] 39 did not express a negative view of law enforcement nor the criminal legal system that implicates the prosecutor's proffered reasoning for excusing [her]." To the extent defendant is suggesting that the prosecutor was being deceptive in not basing his challenge on Juror No. 39's negative experiences, we reject that suggestion because Juror No. 39 relayed no such experiences. Second, defendant argues that a ruling in his favor is dictated by two further cases—namely, *People v. Jimenez* (2024) 99 Cal.App.5th 535 (*Jimenez*) and *Gonzalez, supra*, 104

9

Cal.App.5th 1. However, neither of those cases is on point. (Cf. *Jimenez,* at pp. 541-543, 546-547 [upholding exercise of peremptory strike against a juror who believed law enforcement had a "racial bias" and who was employed by a school district]; *Gonzalez,* at p. 16 [upholding exercise of peremptory strike against juror who "expressed bitterness towards law enforcement"].)

Thus, the prosecutor's stated reasons are not presumptively invalid.[6]

### b.     Non-presumptive invalidity

Where, as we have concluded here, the prosecutor's stated reasons are not presumptively invalid, our task under Code of Civil Procedure section 231.7 is to evaluate whether "there is a substantial likelihood that an objectively reasonable person"—that is, a person who is "aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California"—"would view [actual or perceived] . . . ethnicity . . . as a factor in the use of the peremptory challenge." (*Id.*, subds. (d)(1), (d)(2)(A).)

We conclude this standard is not met, and do so for two reasons.

First, neither reason proffered by the prosecutor—that is, (1) Juror No. 39 being the "victim" of "a very violent crime" constituting a "traumatic experience" that "may cloud her experience in a criminal court system," nor (2) the prosecutor's preference for other "jurors coming up down the line"—is explicitly based on Juror No. 39's ethnicity.

---

[6]     We therefore have no occasion to decide whether the presumption of invalidity was rebutted.

Second, the statutorily enumerated "circumstances" bearing on the trial court's determination do not establish a substantial likelihood that an objectively reasonable person would view ethnicity to have been a factor in the prosecutor's strike. Although defendant and Juror No. 39 are both Latinx, so are the victim of defendant's conduct (Deputy Cruz) as well as the only other witness who testified at trial (Deputy Salas). (Code Civ. Proc., § 231.7, subd. (d)(3)(A); *Gonzalez, supra*, 104 Cal.App.5th at p. 19 [looking to surnames for perceived racial identity is appropriate].) The ethnicity of those pertinent individuals does not "bear on the facts of the case to be tried." (Code Civ. Proc., § 231.7, subd. (d)(3)(B).) The prosecutor's questioning of Juror No. 39 was comparable to (and just as brief as) her questioning of other jurors; although the prosecutor did not question Juror No. 39 about either concern proffered as the reasons for the strike, that is because the court had already asked Juror No. 39 about the first concern (whether the traumatic experience of being raped might "cloud her experience in a criminal court system") by asking whether Juror No. 39 could be "fair," and because it would make no sense for the prosecutor to ask Juror No. 39 about the second concern (whether other jurors "down the line" were better for the prosecution). (*Id.*, subd. (d)(3)(C).) There is also no evidence that the prosecutor did not exercise a peremptory strike against "other prospective jurors" who "provided similar, but not necessarily identical, answers" and "who [were] not" Latinx. (*Id.*, subd. (d)(3)(D).) Neither of the prosecutor's reasons is disproportionately associated with an ethnicity, as rape by a parent could affect a person of any ethnicity and hoping for better jurors down the line is not associated with any ethnicity. (*Id.*, subd. (d)(3)(E).)

11

Defendant notes that the prosecutor did not seek to strike Juror No. 42, who was a victim of domestic violence, but the prosecutor could reasonably infer that the effect of Juror No. 39's rape by a parent was ostensibly more traumatic to that juror (because only Juror No. 39—and not Juror No. 42—indicated discomfort discussing the domestic violence incident in open court) and, more to the point, the record is silent on the ethnicity of Juror No. 42. The prosecutor's two stated reasons were each supported by the record. (*Id.*, subd. (d)(3)(F).) And there is no evidence that the prosecutor's office has a "history of prior" discriminatory peremptory strikes. (*Id.*, subd. (d)(3)(G).)

Defendant resists this conclusion with three arguments. First, defendant argues that an objectively reasonable person would view Juror No. 39's ethnicity as a factor in the prosecutor's strike because the prosecutor did not question Juror No. 39 in greater detail about being raped by her parent and the rape's traumatic effect on her and her ability to be fair and did not question her about her views on law enforcement. We reject this argument. The lines of questioning defendant suggests, apart from being indelicate, were also unnecessary: Juror No. 39's request for a sidebar because she did not feel "comfortable" discussing the rape spoke volumes about the incident's traumatic effect on the juror; the court preemptively asked Juror No. 39 if she could be fair after she relayed the incident; and Juror No. 39's answer that she did not report the incident to law enforcement because her assailant was a parent indicates that her reason for not reporting stemmed either from a desire not to turn in a parent or pressure from that parent to remain quiet—not from any animosity toward law enforcement. Second, defendant argues that we are required to ignore the prosecutor's

12

further explication, at the trial court's behest, of the original two stated reasons for her strike. Although we are to give "special scrutiny" to any prompted explanations, we may still consider that more fulsome explanation (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 799-800); more to the point, the prosecutor's initial reason—that Juror No. 39 "was a victim of [what] sounds like a very violent crime but didn't get the police involved"—was akin to her further comment that Juror No. 39's victimization was a "traumatic experience" that "may cloud her experience in a criminal court system." Third and lastly, defendant argues that the prosecutor's strike also violated *Batson/Wheeler*, but we conclude there was no *Batson/Wheeler* violation for the same reasons we conclude Code of Civil Procedure section 231.7 was not violated. (*Ortiz,* at p. 808.)

## III.   Lesser-Included Offense Instruction

A trial court has a *sua sponte* duty to instruct a jury in a criminal case on any lesser offense necessarily included in a charged offense "if there is substantial evidence that only the lesser crime was committed." (*People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*).) In other words, "[s]ubstantial evidence . . . is evidence from which a reasonable jury could conclude that the defendant committed the lesser, *but not the greater*, offense." (*People v. Landry* (2016) 2 Cal.5th 52, 96.) We review de novo whether the trial court erred in not instructing on a lesser-included offense. (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

Section 69 can be violated in one of two ways—namely, (1) "attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law"; or (2) "resisting by force or violence an officer in the performance of his or her duty." (*People v. Brown* (2016) 245 Cal.App.4th 140, 149.) Where, as

13

here, the charging document and jury instructions instruct on the second way of violating section 69, the crime of assault is "necessarily a lesser included offense" because "it is not possible" to use force or violence "without [*also*] committing an assault." (*Id.* at p. 153; *Smith, supra*, 57 Cal.4th at pp. 242-243.) Thus, whether a trial court errs in not instructing on the lesser-included offense of assault turns on whether a reasonable jury could conclude that the defendant committed the lesser offense of assault, but not the greater offense of resisting an executive officer. Because an officer's use of excessive or unreasonable force justifies resisting arrest under section 69, a defendant can be found guilty of assault but not resisting an executive officer if the charged incident involves the officer's use of excessive or unreasonable force; whether the court erred in not instructing on the lesser-included crime of assault in this case therefore turns on whether a reasonable jury could conclude that the officer resisted by the defendant used excessive or unreasonable force. (*Brown*, at pp. 154-155; *People v. White* (1980) 101 Cal.App.3d 161, 168.) The failure to instruct on a lesser-included offense requires reversal in a noncapital case only if "an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*People v. Wyatt* (2012) 55 Cal.4th 694, 698.)

Even if we assume for purposes of argument that the trial court should have given a lesser-included instruction on assault, there is no reasonable probability that a jury would have convicted defendant solely of assault (rather than resisting an executive officer) because there is no reasonable probability that a jury would have found that Deputy Cruz used excessive or unreasonable force. The facts at trial were relatively

14

uncontroverted, as they came solely from Deputy Cruz and Deputy Salas. Those facts indicate that defendant swung at Deputy Cruz and punched him in the chest as Deputy Cruz was reaching for defendant's wrist, and thus *before* Deputy Cruz ever touched defendant. Thus, Deputy Cruz did not use *any* force—let alone unreasonable or excessive force—prior to defendant punching him. (See, e.g., *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1415-1415 [granting summary judgment on excessive force claim where there was no evidence the defendant-officers "had any physical contact" with the plaintiff].)[7] Defendant urges that Deputy Cruz should not have reached for defendant's wrist in the first place (because, according to defendant, it was against Sheriff's Department policy to do so without waiting for backup), but this argument does not alter the fact that Deputy Cruz did not physically touch defendant at that time, and thus his actions cannot constitute a use of force. The only time Deputy Cruz used force was in punching defendant four or five times while "protect[ing] [him]self" from defendant's onslaught of punches to Deputy Cruz's head and face; given that this use of force was in self-defense, that this use was of the same level of force as the defendant (that is, fists), and that defendant did not suffer any injury, it is not reasonably probable that a jury would have found this use of force to be unreasonable or excessive. (See *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 527 ["An officer "'may use reasonable force to . . . overcome resistance"'"]; § 835a, subds. (b), (d) [an officer "shall not be

_____

[7]    An officer's act in drawing a firearm may constitute an unreasonable or excessive use of force without physical contact, but no such weapon was used here.

15

deemed an aggressor or lose the right to self-defense by the use of objectively reasonable force . . . to overcome resistance"].)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)

16